Bell, J.
 

 The appellant contends that the ordinance here in question is repugnant to, and invades a field controlled by, the provisions of the Emergency Price
 
 *146
 
 Control Act; that the ordinance is unconstitutional, being in conflict with Article VI of, and Section 1 of the Fourteenth Amendment to, the Constitution of the United States; and that it constitutes a delegation of legislative power contrary to the Constitution of Ohio.
 

 In January 1942, the Congress of the United States passed the Emergency Price Control Act of 1942, which is found in Title 50, Appendix, Sections 901 to 946, both inclusive,, U. S.-Code.
 

 In our consideration of the act, the various sections with which we are concerned will be referred to as they are numbered in Title 50, Appendix, U. S. Code.
 

 The act being a federal statute, the constitutionality and the interpretation thereof present federal questions and insofar as. those questions have been determined by the United States Supreme Court we are bound by its decisions. That court has held the act to be constitutional. See
 
 Yakus
 
 v.
 
 United States,
 
 321 U. S., 414, 88 L. Ed., 834, 64 S. Ct., 660.
 

 We therefore enter upon the consideration of our problem with the fact established that the act is valid.
 

 Section 901 states the purposes of the act which will be later noted. -
 

 Section 902 grants authority to the Price. Administrator to make regulations and orders in respect to prices and rents.
 

 Paragraph a of that section is a grant of power to the Price Administrator, generally, to so regulate commodity prices as to prevent inflation, and paragraph b applies to stabilization of rents.
 

 Section 904, paragraph a, reads as follows:
 

 “It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or de-' liver any commodity, or in the course of trade or business to buy or receive any commodity, or to demand
 
 *147
 
 or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2 [section 902 of this appendix], or of any price schedule effective in accordance with the provisions of section 206 [section 926 of this appendix], or of any regulation, order, or requirement under section 202(b) or section 205(f) [sections 922(b) or 925(f) of this appendix], or to offer, solicit, attempt, or agree to do any of the foregoing.”
 

 Section 921 is addressed to the subject of administration and enforcement. By its provisions there was created the Office of Price Administration under the direction of a Price Administrator.
 

 Section 921, paragraph d, reads as follows:
 

 “The administrator may, from time to time, issue such regulations and orders as he may deem necessary or proper in order to carry out the purposes and provisions of this Act.”
 

 Section 924 is entitled “Review.” By paragraph c thereof, there is created a court of the United States to be known as the Emergency Court of Appeals, its jurisdiction is fixed therein and the court is granted the power to make rules governing its procedure.
 

 Paragraph a thereof reads as follows:
 

 “Any person who is aggrieved by the denial or partial denial of his protest [by the Price Administrator] may, within thirty days after such denial, file a complaint with the Emergency Court of Appeals, created pursuant to subsection (c), specifying his objections and praying that the regulation, order, or price schedule protested be enjoined or set aside in whole or in part. A copy of such complaint shall forthwith be served on the administrator, who shall certify and file with such court a transcript of such portions of the proceedings in connection with, the protest as are ma
 
 *148
 
 terial under the complaint. Such transcript shall include a statement setting forth, so far as practicable, the economic data and other facts of which the administrator has taken official notice. Upon the filing of such complaint the court shall have exclusive jurisdiction to set aside such regulation, order, or price schedule, in whole or in part, to dismiss the complaint, or to remand the proceeding * * V’
 

 Section 925 is entitled “Enforcement.” Paragraph b thereof, insofar as pertinent here, reads as follows:
 

 “Any person who
 
 ivillfully
 
 violates any provision of section 4 of this act [section 904 of this appendix], * * * shall, upon conviction thereof, be subject to a fine of not more than $5,000, or to imprisonment for not more than two years in the case of a violation of section 4(c) [section 904(c) of this appendix] and for not more than one year in all other cases, or to both such fine and imprisonment.” (Italics ours.)
 

 Section 925, paragraph c, reads, in part, as follows:
 

 “The district courts shall have jurisdiction of criminal proceedings for violations of section 4 of this act
 
 [section 904 of this appendix]', and, concurrently with state and territorial courts, of all other proceedings under section 205 of this act [this section]. Such criminal proceedings may be brought in any district in which any part of any act or transaction constituting the violation occurred.” (Italics ours.)
 

 Sufficient of the act has been quoted to render intelligible the question of the claimed repugnancy between the act and the ordinance, and the claimed invasion by the latter of the field occupied by the former.
 

 Before proceeding .with the consideration of appellant’s claims, the contention of appellee that this case in some fashion involves a question of power under Sections 3 and 7 of Article XVIII of the Ohio Consti
 
 *149
 
 tution, commonly known as the
 
 home rule amendment,
 
 should be put to rest. No question of municipal home rule is in anywise involved as we shall later see.
 

 Speaking generally of governmental power it may be observed that federal power is
 
 granted or delegated poiver
 
 and state power is
 
 reserved power.
 

 The powers granted by the Constitution to the national government may be divided into two general classes, exclusive powers and concurrent powers. Exclusive powers are of two types. (1) Those which cannot be exercised by the states under ahy consideration; (2) those which cannot be exercised by the state without the express consent of Congress.
 

 The power to declare and levy war belongs to the type of exclusive power which cannot be exercised by the state under any condition.
 

 The Emergency Price Control Act, in section 901, paragraph a, states:
 

 “It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war,
 
 and the purposes of this act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to the federal, state, and local governments, which would
 
 *150
 
 result from abnormal increases in prices; to assist in securing adequate production of commodities and facilities; to prevent a post-emergency collapse of values ; to stabilize agricultural prices in the manner provided in section 3 [section 903 of this appendix]; and to permit voluntary co-operation between the government and producers, processors, and others to accomplish the aforesaid purposes. It shall be the policy of those departments and agencies of the government dealing with wages (including the Department of Labor and its various bureaus, the War Department, the Navy Department, „the War Production Board, the National Labor Relations Board, the National Mediation Board, the National War Labor Board, and others heretofore or hereafter created), within the limits of their authority and jurisdiction, to work toward a stabilization of prices, fair and equitable wages, and cost of production.” (Italics ours.)
 

 There can be no dispute upon the proposition that the act was passed as a war measure.
 

 Our next step is to determine whether the subject of nation-wide rationing and price control is within the exclusive control of Congress.
 

 Black on Constitutional Law (2 Ed.), 174, says:
 

 “Exclusive and concurrent powers.
 

 “102. Some of the powers granted to Congress by the Constitution are vested exclusively in that body; some others may be exercised concurrently by the states in the absence of action by the national government thereon. A power vested in Congress is exclusive of all state action on the same subject when — ■
 

 “(a) It is made so by the express language of the Constitution.
 

 “(b) Where in one part of the Constitution an authority is granted to Congress and in another part the states are prohibited from exercising a like authority.
 

 
 *151
 
 “(e) Where a similar power in the states would be inconsistent with and repugnant to the authority granted to Congress, that is,
 
 where the subject matter of the power is national and can be governed, only by a uniform system.”
 
 (Italics ours.)
 

 When the subject matter is national in character so as to require uniformity of regulation affecting the states alike, the power of Congress is exclusive. 11 American Jurisprudence, 874, Section 177.
 

 In
 
 Minnesota Rate Cases,
 
 230 U. S., 352, 399, 57 L. Ed., 1511, 33 S. Ct., 729, 48 L. R. A. (N. S.), 1151, Ann. Cas. 1916A, 18, the United States Supreme Court, speaking through Chief Justice Hughes, said:
 

 “It has repeatedly been declared by this court that as to those subjects which require a general system or uniformity of regulation the power of Congress is exclusive.”
 

 Sufficient has been said to demonstrate that the subject matter of nation-wide rationing and price control of commodities as well as price control of rents is national in character and can be governed only by a uniform system. Therefore, that subject matter is within the exclusive control of Congress.
 

 Where Congress, acting under one of its exclusive powers, has legislated upon a particular subject matter which is national in character and can be governed only by a uniform system, the states (or their political subdivisions) are not permitted to legislate upon the same subject matter under state police power.
 

 The case of
 
 Southern Ry. Co.
 
 v.
 
 Rd. Commission of Indiana,
 
 236 U. S., 439, 59 L. Ed., 661, 35 S. Ct., 304, presented this situation:
 

 Congress under its exclusive power to regulate interstate commerce passed the Safety Appliance Act. Thereafter the state of Indiana passed an act with reference to grabirons and handholds on railroad cars.
 
 *152
 
 The state act was challenged and, in deciding the case, the United States Supreme Court said:
 

 ‘ ‘ The principle that an act may constitute a criminal offense against two sovereignties so that punishment by one does not prevent punishment by the other, only relates to cases where both sovereignties have jurisdic- . tion over the act. It has no application where one of the governments has exclusive jurisdiction of the subject matter and therefore has the exclusive power to punish. * * *
 

 “Congress may so circumscribe its regulations in regard to a matter within its exclusive jurisdiction as to occupy only a limited field and leave a part of the subject open to incidental legislation by the states; but the Safety Appliance Act extended to the whole subject of equipping cars with safety appliances to the exclusion of further action by the states.”
 

 In
 
 Prigg
 
 v.
 
 Commonwealth of Pennsylvania,
 
 41 U. S. (16 Pet.), 539, 617, 10 L. Ed., 1060, it is said: “*
 
 *
 
 * If Congress have a constitutional power to regulate a particular subject, and they do actually regulate it in a given manner, and in a certain form, it cannot be that the state legislatures have a right to interfere, and, as it were, by way of complement to the legislation of Congress, to prescribe additional regulations, and what they may deem auxiliary provisions for the same purpose. In such a case, the legislation of Congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject matter.”
 

 In
 
 Terminal Rd. Assn. of St. Louis
 
 v.
 
 Brotherhood of Rd. Trainmen,
 
 318 U. S., 1, 87 L. Ed., 571, 63 S. Ct., 420, Mr. Justice Jackson, speaking for the court said, at page 7:
 

 “We must decide the question of state power in this -case in the absence of any act of Congress that con
 
 *153
 
 flicts with the order or may be said to occupy its field.”
 

 In that case it was helcl that the Illinois Commerce Commission had power to order the terminal association to provide caboose cars within the state for its employees, and such order Was not rendered invalid by the fact that some of the runs, on which cabooses were so ordered, of necessity traversed state lines.
 

 The basis of the decision was that the federal government had not occupied the field, and the commission’s order was valid.
 

 In the instant case the Emergency Price Control Act does occupy the field upon a subject matter which is national in character and can be governed only by a uniform system, to wit, nation-wide rationing and price control of commodities and rents. Nowhere in the act has Congress granted its express consent to the exercise of concurrent power by the states.
 

 Where, as here, Congress has enacted legislation upon a subject matter within its exclusive control, it also has full and complete authority to determine the forum or forums in which shall be determined all controversies arising thereunder. See
 
 Plaquemines Tropical Fruit Co.
 
 v.
 
 Henderson,
 
 170 U. S., 511, 516, 517, 42 L. Ed., 1126, 18 S. Ct., 685;
 
 The Moses Taylor,
 
 71 U. S. (4 Wall.), 411, 428, 430, 18 L. Ed., 397;
 
 Tennessee
 
 v.
 
 Davis,
 
 100 U. S., 257, 25 L. Eel., 648;
 
 McKay
 
 v.
 
 Kalyton,
 
 204 U. S., 458, 468, 469, 51 L. Ed., 566, 27 S. Ct., 346.
 

 It is beyond doubt that Congress has occupied the field upon the subject matter here involved; that it has not expressly granted concurrent power to the states; and that by the language of the act it was the intent of Congress to exercise exclusive control. This position is further fortified by the fact that Congress has expressly determined the forums in which controversies arising under the act shall be determined.
 

 
 *154
 
 In the case of
 
 Lockerty
 
 v.
 
 Phillips,
 
 319 U. S., 182, 187, 87 L. Ed, 1339, 63 S. Ct., 1019, Chief Justice Stone, in construing- section 924 of the Emergency Price Control Act, said:
 

 “There is nothing in the Constitution which requires Congress to confer equity jurisdiction on any particular inferior federal court. All federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to ‘ordain and establish’ inferior courts, conferred on Congress by Article III, Section 1 of the Constitution. Article III left Congress free to establish inferior federal courts or not as it thought appropriate. It could have declined to create any such courts, leaving suitors to the remedies afforded by state courts, with such appellate review by this court as Congress might prescribe.
 
 Kline
 
 v.
 
 Burke Construction Co.,
 
 260 U. S., 226, 234, and cases cited;
 
 McIntire
 
 v.
 
 Wood,
 
 7 Cranch, 504, 506. The congressional power to ordain and establish inferior courts includes the power ‘of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.’
 
 Cary
 
 v.
 
 Curtis,
 
 3 How., 236, 245;
 
 Lauf
 
 v.
 
 E. G. Shinner & Co.,
 
 303 U. S., 323, 330;
 
 Hallowell
 
 v.
 
 Commons,
 
 239 U. S., 506, 509;
 
 Smallwood
 
 v.
 
 Gallardo,
 
 275 U. S., 56;
 
 Toucey v. New York Life Ins. Co.,
 
 314 U. S., 118, 129. See also
 
 United States
 
 v.
 
 Hudson and Goodwin,
 
 7 Cranch, 32, 33;
 
 Mayor
 
 v.
 
 Cooper,
 
 6 Wall., 247, 252 * *
 

 In that case it was held that the Emergency Court of Appeals had exclusive jurisdiction to enjoin enforcement of the orders and regulations of the Price Administrator and that the act withdrew such jurisdiction from every other federal and state court.
 

 In the case of
 
 Bowles
 
 v.
 
 Willingham,
 
 321 U. S., 503,
 
 *155
 
 88 L. Ed., 892, 64 S. Ct., 641, this situation was presented :
 

 Mrs. Willingham brought an action in a Georgia state court to restrain the issuance of certain rent orders under the Emergency Price Control Act of 1942, on the ground that the orders and the statutory provisions on which they rested were unconstitutional. The state court issued a temporary restraining order. Bowles, Price Administrator, then brought an action in the federal district court pursuant to section 205(a) of the act to restrain Mrs. Willingham from further prosecution of the state proceeding and to restrain the county sheriff from executing or attempting to execute any orders in the state proceedings. The district court dismissed the action. Upon review the Supreme Court reversed the district court and held, in effect, that the state court was without jurisdiction in such suits and that the injunction should have been granted.
 

 Headnote one of that case reads as follows:
 

 “Under section 205(a) of the Emergency Price Control Act of 1942 and section 24(3) of the Judicial Code, and in view of section 204(d) of the act, a federal district court in a suit by the administrator has authority to enjoin a proceeding in a state court to restrain issuance by the administrator of rent orders; and section 265 of the Judicial Code, forbidding federal courts to enjoin proceedings in state courts, is inapplicable.
 

 “(a) Congress may determine whether the federal courts should'have exclusive jurisdiction of controversies which arise under the Constitution and laws of the United States and which are therefore within the judicial power of the United States as defined in Art. Ill, Section 2 of the Constitution, or whether they
 
 *156
 
 should exercise that jurisdiction concurrently with the courts of the states.
 

 “(b) The authority of Congress to withhold from state courts all jurisdiction of controversies arising under the Constitution and laws of the United States includes the power to restrict the occasions when that jurisdiction may be invoked.”
 

 In footnote six at page 511, this language is used: “It is true that section 205(c) gives to state and territorial courts concurrent jurisdiction of all proceedings (except criminal proceedings) under section 205 of the act. But they embrace only enforcement suits brought by the administrator, not suits brought to restrain or enjon enforcement of the act or orders or regulations thereunder.”
 

 The ordinance here in question does nothing more than provide a penalty for the violation of the federal act within the confines of the city of Cleveland.
 

 Prom a study of the act and the pronouncements of the Supreme' Court of the United States, we are of opinion that Congress has determined that federal courts should have exclusive jurisdiction in criminal proceedings for violations of the act.
 

 We therefore conclude that the city of Cleveland was without authority to enact this ordinance for the reason that Congress had theretofore occupied the field.
 

 Even assuming the ordinance to be valid upon the basis hereinbefore discussed, it is subject to another incurable infirmity in that it unlawfully delegates legislative power to a federal agency.
 

 Under the Constitution of Ohio the legislative power of this state is vested in the G-eneral Assembly. Insofar a's the functions of the city of Cleveland are legislative, they are vested in the city council and that body cannot delegate the exercise of those functions to any other authority.
 

 
 *157
 
 The last pronouncement of this court upon the subject of delegation of legislative power is found in the case of
 
 Belden
 
 v.
 
 Union Central Life Ins. Co.,
 
 143 Ohio St., 329, 55 N. E. (2d), 629. Three paragraphs of the syllabus of the case are pertinent here and read as follows:
 

 “1. The legislative power of the state is vested in the General Assembly by Section 1, Article II of the Constitution and that body may not abdicate or transfer to others the essential legislative functions with which it is vested.”
 

 ”3. It is no violation of the constitutional inhibition against the delegation of legislative power for the General Assembly to establish a policy and fix standards for the guidance of administrative agencies of government while leaving to such agencies the making of subordinate rules within those fixed standards and the determination of facts to which the legislative policy applies.”
 

 “5.
 
 Where the constitutionality of an act is challenged upon the ground that the General Assembly has delegated legislative power, that question will be determined by considering the provisions of the act itself without regard to extrinsic facts.”
 

 What was said there applies with equal force to any ordinance enacted by a municipality. The principle is fundamental that public powers conferred upon a municipal corporation cannot be surrendered or delegated to others. See 1 McQuillin on Municipal Corporations (2 Ed.), 1049, Section 382; 1 Dillon on Municipal Corporations (5 Ed.), 460, Section 244; Cooley on Constitutional Limitations (8 Ed.), 434.
 

 In the case of
 
 City of Cincinnati
 
 v.
 
 Cook,
 
 107 Ohio St., 223, 140 N. E., 655, the syllabus reads as follows:
 

 “A
 
 city ordinance makes it unlawful for any driver or operator of any vehicle to permit his or her vehicle
 
 *158
 
 to stand in front of á certain railroad passenger station therein named, between points designated, ‘unless the permission to stand has been granted by the person having the supervision over said passenger station.’
 

 “Held:
 
 Such ordinance is invalid because of its attempted delegation of legislative power, and for the reason that it is violative of the equal protection of the law guaranties of the state and federal constitutions.”
 

 • With these principles in mind we revert to the ordinance. It is therein provided that it is an offense against the city for a person to violate any commodity ceiling price fixed under authority of the Emergency- Price Control Act. Such prices are determined by the Price Administrator, a federal agency, over whom council has no authority or control. That body did not and could not establish a policy or fix standards for his guidance. Therefore in the last analysis the offense is the violation of an order of the Price Administrator. Such an ordinance is invalid because of its attempted delegation of legislative power to a federal agency.
 

 It is a generally accepted principle that a state legislature cannot delegate legislative power to a federal agency. See
 
 State
 
 v.
 
 Intoxicating Liquors, Vino Medical Co., Inc.,
 
 121 Me., 438, 117 A., 588;
 
 State
 
 v.
 
 Gauthier,
 
 121 Me., 522, 118 A., 380;
 
 Holgate Bros. Co.
 
 v.
 
 Bashore,
 
 331 Pa., 255, 200 A., 672;
 
 Smithberger
 
 v.
 
 Banning, Secy.,
 
 129 Neb., 651, 262 N. W., 492; and
 
 Hutchins
 
 v.
 
 Mayo, Commr.,
 
 143 Fla., 707, 197 So., 495.
 

 We therefore conclude that this ordinance is invalid for two reasons: (1) It attempts to legislate in a field within the exclusive power of the Congress at'a time when the field was fully occupied; and (2) it attempts to delegate legislative power to a 'federal agency.
 

 It is strongly urged that this ordinance was passed as an aid to the war effort. If at any time Congress
 
 *159
 
 should conclude that to be true, that body may grant authority to the states and their political subdivisions to legislate upon such subject matter. Until that time comes it is the duty of the courts to condemn legislation clearly violative of constitutional provisions.
 

 Our conclusion makes it unnecessary to consider or determine other questions relied upon by the appellant.
 

 In arriving at our conclusions we are not unmindful that the Supreme Court of Michigan in the case of
 
 People
 
 v.
 
 Sell
 
 has sustained an ordinance somewhat similar to the one in the instant case, or that the Court of Appeals of New York has affirmed (without opinion) the judgment of the New York Supreme Court, Appellate Division, affirming judgments of conviction for violation of the New York State War Emergency Act and of the resolution of the New York State War Council which promulgated in that state the price regulations issued by the Office of Price Administration.
 

 Whether the same considerations were presented there as here, we do not know, the records and briefs in those cases not being available. However, we do know that the first proposition herein considered was not discussed by the Supreme Court of Michigan nor by the New York Supreme Court, Appellate Division.
 

 It follows from what has been said that the judgment of the Court of Appeals should be and hereby is reversed and the cause is remanded to that court with instructions to reverse the judgment of the Municipal Court of the city of Cleveland and to discharge the appellant.-
 

 Jlodgment reversed and cause remanded.
 

 Weygandt, C. J., Zimmerman, Matthias and Hart, JJ., concur.
 

 Williams, J., concurs in the judgment.
 

 Turner, J., dissents. -