Stewast, J.
 

 The questions presented to the court by plaintiff are:
 

 1. Does the resolution of the Butler county board of health, so far as it prohibits importation into such county of garbage to be used to feed animals, constitute an 'unconstitutional taking of property without due process of law and deprive plaintiff of an equal protection of law?
 

 2. Does the resolution, so far as it prohibits importation into the county of garbage to be used as animal food, fail because it is a law of a general nature with■out general application?
 

 3. Is the resolution in conflict with Section 12646, General Code?
 
 '
 

 4. Is Section 1261-42, General Code, unconstitutional as being a delegation of legislative power?
 

 
 *395
 
 5. Has the hoard enlarged and usurped the power delegated?
 

 We think these questions can be compressed into:
 

 1. Is Section 1261-42, General Code, by authority of which the resolution in question was enacted, unconstitutional as being a delegation of legislative power?
 

 2. If not, does the resolution itself constitute legislation rather than administrative rules, and is it reasonable and neither arbitrary, discriminatory, mor in conflict with the law?
 

 Section 1261-42, General Code, has been referred to in the statement of facts. It permits the board of health to make “such orders and regulations as.it deems necessary for its own government, for the public health, the prevention or restriction of disease, and the prevention, abatement or suppression of nuisances.” It provides for the adoption, recording and certification of the regulations, and that, after the proper steps have been taken,, the regulations shall have the same force and effect' as municipal ordinances.
 

 The attack upon the constitutionality of the statute is bottomed on the proposition that while it permits the broad power to adopt orders for the prevention, abatement or suppression of nuisances, it sets forth no standard to guide the boards of health and, therefore, delegates legislative power to them.
 

 Under our Constitution the law-making function is assigned exclusively to the General Assembly, and it is a cardinal principle of representative government that the law-making body cannot delegate the power to make laws to any other authority or body. This general principle is universally held but its particular application in the delegation of powers to boards and commissions, the establishment of which has become essential in the complexities of modern life, frequently creates a difficult problem. While no legislative power can be delegated to such bodies, the law-making body
 
 *396
 
 can confer administrative powers upon them to make-rules and regulations to carry out the legislative intent.
 

 In
 
 Matz, Admr.,
 
 v. J.
 
 L. Curtis Cartage Co.,
 
 132 Ohio St., 271, 7 N. E. (2d), 220, Judge Williams stated, at page 279:
 

 . “It is an accepted doctrine in our constitutional law that the law-making • prerogative is a sovereign power conferred by the people upon the legislative branch of the government, in a state or the nation, and cannot be delegated to other officers, board or commission, or branch of government. Thus neither the-Congress of the United States nor the General Assembly of Ohio can delegate its legislative power, but may confer- administrative power on an executive, a board or commission.”
 

 Ordinarily, in delegating to boards and commissions, the authority to make rules and regulations, the General Assembly must establish the legal policy by adopting standards and authorizing the boards and commissions to make their rules in accordance with such standards. In the picturesque language of Justice Cardozo in his dissenting opinion in
 
 Panama Refining Co. v. Ryan,
 
 293 U. S., 388, 79 L. Ed., 446, 55 S. Ct., 241, the power conferred must not be “unconfined and vagrant” and must be “canalized within banks that keep it from overflowing.” However, it is recognized' that there are many occasions where the nature of the-problem makes it impossible to lay down standards, and as a result rule-making bodies must be allowed a wide discretion without anything as their guide except the general policy of the law-making body and the law that such bodies must not legislate or make rules which are unreasonable, discriminatory or contrary to constitutional rights.
 

 That situation is usually present in reference to-
 
 *397
 
 questions of public morals, health, safety or general welfare, and this court has unqualifiedly held in paragraph seven of the syllabus in the
 
 Mats case, supra,
 
 as follows:
 

 “As a general rule a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations.”
 

 We. hold, therefore, that Section 1261-42, General Code, is a constitutional enactment and that under it the Board of Health of the Butler County General Health District had authority to enact reasonable, nondiscriminatory and legal rules and regulations in reference to garbage and hog feeding within its district.
 

 That brings us to the question whether the resolution under attack is a proper exercise of the power given the board of health by the statute. The majority of this court is of the opinion that those parts of the resolution, which limit the feeding of waste, of vegetable and animal origin, from markets, groceries and similar establishments, which waste in the resolution is designated as garbage, to such waste as is produced on the premises, and which further make it unlawful to transport, deliver or deposit collected garbage for the purpose of feeding the same in whole or in part to swine or other animals into or within the territory under the jurisdiction of the board of health,
 
 *398
 
 constitute legislation upon the part of the board as distinguished from proper rule making and are unreasonable, discriminatory and unlawful.
 

 No one doubts that the board has wide discretion in making rules and regulations to promote sanitary conditions, wholesome atmosphere and freedom from nuisance, and in all other matters which concern public health and happiness. In fact, the state itself has legislated upon this very subject. Section 12646, General Code, provides as follows:
 

 “Whoever erects, continues, uses or maintains a building, structure or place for the exercise of a trade, employment or business, or for the keeping or feeding of an animal which, by occasioning noxious exhalations or noisome or offensive smells, becomes injurious to the health, comfort or property of individuals or of the public, or causes or suffers' offal, filth or noisome substances to be collected or remain in any place to the damage or prejudice or [of] others or of the public, or unlawfully obstructs or impedes the passage of a navigable river, harbor or collection of water, or corrupts or renders unwholesome or impure, a watercourse, stream or water, or unlawfully diverts such watercourse from its natural course or state to the injury or prejudice of others, shall be fined not more than five hundred dollars.”
 

 If plaintiff or anyone else violates any provision of that statute, he can be tried, convicted and punished in accordance therewith, but nowhere has it been claimed that the mere feeding of swine with animal or vegetable waste is of itself detrimental to health. In fact, the resolution permits the feeding of such waste if produced on the premises, and it is difficult to see how waste produced on the premises can be different in its effect than waste gathered from hotels and restaurants. Surely the board of health could effectively
 
 *399
 
 and reasonably regulate the importation of waste products so that, they would in.no way constitute a menace to tbe health or welfare of the community, without the necessity of an absolute prohibition of such importation and thus discriminate between the waste produced on the premises and that brought from the outside.
 

 The resolution has an even greater vice than that just enumerated. It says: “It shall be unlawful except as hereinafter provided * # * to transport, deliver or deposit collected garbage for the purpose of feeding the same in whole or in part to swine * * *.” . '
 

 The hereinafter provision is:
 

 “Any person, firm, corporation or institution that maintains a general system of collection and disposal of garbage may apply to the health commissioner for approval of such system of collection and disposal. Such approval shall be in writing and thereafter the* continuance of such general system of collection and disposal shall not constitute a violation of the provisions of these regulations.
 

 “The feeding of waste products of distillation of grain is permitted under control of the health commissioner and under conditions imposed by this regulation, for feeding of any garbage.”
 

 In other words, it is made unlawful to transport garbage to feed swine, but if one maintains a general system of collection and disposal of garbage which the health commissioner permits o,r licenses without any rules or standards as to how it shall be maintained or operated, the prohibition against the transportation, delivery or deposit of garbage is lifted as to such permittee or licensee.
 

 It is difficult to conceive of a regulation which would give more arbitrary, unreasonable and unconstitutional power to an officer without any guide or check upon
 
 *400
 
 Mm. Certainly the giving of such power by the board •of health to its health commissioner and the prohibition against the transportation of garbage as to the public generally but the allowance of it to those to whom the health commissioner may issue an approval goes far beyond the exercise of a proper administrative rule-making power.
 

 In 30 Ohio Jurisprudence, 343, Section 64, it is stated:
 

 “A hog farm or piggery located outside the limits of a municipal corporation is a lawful business and not a nuisance
 
 per se.
 
 It becomes a nuisance only when it is operated in such a manner as to annoy and injure private persons or to injure property.”
 

 Since plaintiff’s business is not of itself either a nuisance or unlawful the defendants have the power to make all reasonable rules and regulations for the (conduct of that business, to the end that it may not become a factual nuisance. The making of such reasonable rules and regulations would constitute an administrative function, but when defendants, undertake to prohibit a business not of itself unlawful and which is susceptible to proper regulation they go beyond their administrative powers and exercise a legislative function which, under our Constitution, belongs exclusively to the General Assembly.
 

 It may be argued that the board of health has not absolutely prohibited the importation of garbage into the health district, for the reason that it has delegated to the health commissioner the right to grant a written permit to any person, firm, corporation or institution that maintains a general system of collection and disposal of garbage, if the health commissioner approves .such system. No standard of specifications as to what 4he system shall be is set up but the granting of the permission is left entirely to the unfettered judgment of the commissioner.
 

 
 *401
 
 We are of the opinion that this is a delegation of legislative power to a commissioner by a board which has not itself the constitutional right to exercise legislative power. In
 
 Harmon
 
 v.
 
 State,
 
 66 Ohio St., 249, 64 N. E., 117, 58 L. R. A., 618, this court had before it the question of the constitutionality of the Roberts Law, which provided for the appointment of a chief examiner, and that he could appoint six district examiners, each to serve in a district to be formed by the chief examiner. That law further provided that any person who desired to act as a steam engineer could make application to any district examiner and if, upon examination, the applicant was found trustworthy and competent, a license would be granted him to have charge of or operate any steam plant.
 

 The court said at page 253:
 

 “Thus allowing the examiner of a district to, in effect, make the law for his district, limited only by his will as to what shall constitute the standard of the qualification of engineers, is granting legislative power to such examiner, and the appeal to the chief examiner does not change the matter. '
 

 “By Section 1 of Article II of the Constitution all legislative power is vested in the General Assembly, find this power cannot be delegated to individuals or officers. ”
 

 It- would surely seem that if the General Assembly • cannot itself delegate to a person the power to arbitrarily pass upon the trustworthiness and competency of an applicant for a license, even more emphatically a board which has no legislative power itself cannot delegate such power to its officer.
 

 In the case of
 
 City of Cincinnati
 
 v.
 
 Cook,
 
 107 Ohio St., 223, 140 N. E., 655, this court considered an ordinance of the city of Cincinnati which made it unlawful for any driver or operator of a vehicle to permit that vehicle to stand in front of a named railroad station
 
 *402
 
 unless permission to so stand had been granted by the person having supervision over the station. This court said in the syllabus:
 

 “Such ordinance is invalid because of its attempted delegation of legislative power, and for the reason that.it is violative of the equal protection of the law guaranties of the state and federal constitutions.”
 

 Judge Matthias on page 226 said:
 

 “This ordinance will not stand the test applied by 1 Dillon on Municipal Corporations (5 Ed.),'Section 224, from which we quote the following: ‘The principle is a plain one that the public powers or trusts devolved by law or charter upon a council or governing body, to be exercised by it when and in such manner as
 
 it
 
 shall judge best,
 
 cannot be delegated to others.'’
 
 ”
 

 On page 227 Judge Matthias continued:
 

 “The effect of this ordinance is to grant a privilege or. immunity to one and deny it to another of the same class. Ordinances to be valid must be general in their nature and impartial in their operation, and those which make an act penal if done by one person and not so if committed by another cannot be sustained. ”
 

 If an ordinance of a city council, granting one in charge of a railroad station the power to designate the persons who shall have permission to have their vehicles stand in front of such station, is a delegation of legislative power and violative of the equal-protection guaranties of the state and federal constitutions, the delegation of power by a nonlegislative board to its officer to arbitrarily decide who can and who cannot transport garbage in a particular district even more offends against our constitutional safeguards.
 

 The line which separates legal and constitutional delegation of power for administrative purposes and the delegation of legislatives discriminatory and un
 
 *403
 
 reasonable power is frequently a tbin one, obscured in a twilight zone, but, nevertheless, it is the duty of courts to find it and to confine boards, commissions and officers to the exercise of powers which aré regulatory and administrative, and to interdict as to them functions which belong exclusively to legislative bodies. It is only thus that we shall continue a government of laws and not of men.
 

 The judgment of the Court of Appeals is reversed and that of the Court of Common' Pleas affirmed.
 

 Judgment reversed.
 

 Turner, Matthias and Hart, JJ., concur.
 

 . Weygand,t, C. J., Zimmerman and Sohngen, JJ., dissent.