Robert G. SPROUL, Plaintiff–Appellant,

v.

CITY OF WOOSTER,
Defendant–Appellee.

No. 86–3781.

United States Court of Appeals,
Sixth Circuit.

Argued June 18, 1987.

Decided Feb. 26, 1988.

Michael T. Gavin, Eli Manos (argued), Mansour, Gavin, Gerlack & Manos, Cleveland, Ohio, for plaintiff-appellant.

Daniel J. O'Loughlin (argued), Maria Codinach, Squire, Sanders & Dempsey, Cleveland, Ohio, H. Lloyd Cornelius, Director of Law, City of Wooster, Wooster, Ohio, for defendant-appellee.

Before MERRITT, MARTIN and WELLFORD, Circuit Judges.

WELLFORD, Circuit Judge.

Plaintiff Sproul is a real estate developer who obtained an option on substantial acreage located primarily in Wayne Township, Ohio. Most of the acreage adjoins the defendant City of Wooster city limits, but two acres under option were actually in Wooster. Sproul acquired these options intending to construct a shopping center and residential development on the site. Before the project could come to fruition, however, it was necessary to secure water and sewer service from the City of Wooster for the entire development. Approval was from Wooster for expansion of its water and sewer services to serve that part of the land outside the Wooster city limits.

In July of 1983, Sproul made an informal presentation to the Wooster City Council and the Planning Commission. After that presentation, he met privately with Mayor Margaret Demorest, Director of Administration Thomas Spitler, and City Council

President Clyde Breneman. During the private meeting, Sproul contends that Mayor Demorest agreed that it was the City's policy to extend the services if a petition to annex the property were filed for approval. Filing of a petition for annexation, not its ultimate approval by the Wayne County Commission, was alleged to be the necessary step to secure the services. According to the official in charge of Wooster's water and sewage system, this procedure had been followed in three previous cases.

On September 21, 1983, after filing the annexation petition and after the petition became irrevocable, Sproul requested and received estimates from the City detailing the cost of providing water and sewer service to the site. Pursuant to these estimates, Sproul paid a total of $10,000.75 to the City: $2,500 to cover anticipated water connections, $7,300.75 for an "availability charge" on sewer service, and another $200 to cover inspection of the tap-in lines. Extensions to the water and sewer lines necessary to service the mall were then constructed, costing Sproul an additional $20,000. These lines were inspected and approved by the City.

On February 1, 1984, however, the Commissioners of Wayne County voted 2–1 to deny the petition for annexation. The new mayor of Wooster, who had replaced Demorest, former Council President Clyde Breneman, informed Sproul that City services could not be extended to the proposed development unless annexation was reconsidered and approved by the Wayne County Commission, or the City Council specifically approved an extra-territorial expansion of the services in question. Mayor Breneman stated in his letter to Sproul that "[i]n the absence of Council approval the Administration is without authority to allow the extension of water and sewer beyond the corporate limits." The City refunded the $2,500 paid for anticipated water connec-

tions, but did not refund the $7,300.75 paid for sewer connections since that money had already been paid over to the landowner who constructed the lines into which the mall was to tap.[1] After it became obvious to Sproul that he was not going to secure approval for the extension from the City Council, the present suit was filed.

## PROCEDURAL BACKGROUND

Sproul now appeals from the summary judgment granted defendant on all counts. Count one of the complaint alleged a breach of contract under Ohio law based on the City's repudiation of an agreement allegedly reached during the July 1983 meeting with Demorest, Spitler, and Breneman. Count two alleged a deprivation of due process and equal protection in violation of 42 U.S.C. § 1983. Count three alleged a conspiracy between City officials and the plaintiff's commercial competitors, presumably the owners of commercial property located within the city limits, to deprive plaintiff of his right to equal protection in violation of 42 U.S.C. § 1985(3). The fourth count alleged that the City used its monopoly power over water and sewer service to benefit plaintiff's competitors in violation of the Sherman Act.

The district court disposed of plaintiff's claims in three stages. In the first opinion, issued on June 5, 1985, the court dismissed the due process and equal protection claims brought under 42 U.S.C. §§ 1983, 1985(3). The procedural due process claim was dismissed because the plaintiff failed to show that state remedies were inadequate under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Campbell v. Shearer*, 732 F.2d 531 (6th Cir.1984). The equal protection claims were dismissed because the plaintiff failed to show that the alleged deprivation was the result of any class-based antagonism. With regard to the § 1985(3) claim in particular, the court

---

1. Apparently, when a new development taps into existing sewer lines, the landowners who paid for the original extension receive a reimbursement. This spreads the cost of extending the lines among all those who are later benefitted and eliminates what would otherwise be an insuperable "free-rider" problem. The City acts as a middleman in this arrangement—collecting fees from those who subsequently tap into the line and passing them on to the previous users. In this instance, the City had paid over Sproul's money to another landowner who constructed the lines into which Sproul's proposed mall development was to tap.

interpreted *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), to hold that the statute was not intended to protect the "class" of nonresident real estate developers from economic discrimination.

The district court granted summary judgment to the City on the Sherman Act antitrust claims in its second opinion issued July 19, 1985. In dismissing this claim, the court relied on the state action exemption enunciated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), as interpreted to cover municipalities in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). The district court looked to Ohio law and found that the state authorized the City to engage in anticompetitive conduct in operating its water and sewer system. The court then held under *Town of Hallie* that this was sufficient to exempt the City from antitrust liability.

On July 8, 1986, the district court finally granted summary judgment to the City on the state law contract claims. The principal issue raised by that claim was whether Mayor Demorest had the authority to enter into a contract for the extension of services beyond the city limits. The district court found that the Mayor did not have the authority to make such a contract, since control over extraterritorial expansion of City services rests in the City Council under Ohio law. Therefore, the plaintiff could not bind the City to the alleged contract even if it was shown to exist.

In the present appeal, plaintiff assigns error as to each of the judgments granted to the City on each separate claim. Plaintiff, however, no longer presses the equal protection aspect of his claims under 42 U.S.C. §§ 1983, 1985(3).

## THE ANTITRUST CLAIM

■ The principle that anticompetitive state action is exempt from the Sherman Act was first established by the Supreme Court in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The state action exemption is implied under the Sher-man Act. It is based on the absence of legislative history indicating that Congress intended the statute to regulate the governmental activities of the states. As observed by the Court in *Parker*, "We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." 317 U.S. at 350–51, 63 S.Ct. 313–14. Under the *Parker* rule, therefore, the Sherman Act does not reach restraints on trade imposed as an "act of government." *Id.* at 352, 63 S.Ct. at 314.

The Supreme Court recently clarified the application of the state action doctrine to municipalities in a case which, interestingly, also involved the extra-territorial expansion of sewage service. In *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Court reaffirmed that municipalities are entitled to the exemption where they "demonstrate that their anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *Id.* at 38–39, 105 S.Ct. at 1716–17 (quoting *City of Lafayette, La. v. Louisiana Power & Light Co.*, 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978) (Brennan, J., concurring)). To determine whether the City acts pursuant to a state policy, it is necessary to examine the statutory scheme under which it acts. Explicit legislative authorization for anticompetitive acts is not necessary: it is sufficient that the state bestows "broad regulatory authority" from which anticompetitive effects would logically result. *Town of Hallie*, 471 U.S. at 41–43, 105 S.Ct. at 1717–19.

We find similarity between the statutes considered in *Town of Hallie* and those involved in the present case. The Ohio statutes confer the same type of "broad regulatory authority" that was considered anticompetitive in *Town of Hallie*. Under Ohio law, a municipality has very wide discretion over city services. A city may choose to serve only its inhabitants, or can provide extraterritorial service subject to any constitutionally permissible restriction.

*See State ex rel. Indian Hill Acres, Inc. v. Kellogg,* 149 Ohio St. 461, 79 N.E.2d 319 (1948). A city also has the power to exclude competing suppliers from serving its inhabitants. *See Village of Lucas v. Lucas Local School District,* 2 Ohio St.3d 13, 442 N.E.2d 449 (1982). Like the statutes at issue in *Town of Hallie,* these broad grants of authority from the State of Ohio to the City of Wooster are foreseeably anticompetitive. As a result, the City enjoys a derivative state action exemption, and the district court correctly granted summary judgment to the City of Wooster on the Sherman Act claims in the present litigation.

### THE SECTION 1983 CLAIM

■ The essence of Sproul's procedural due process claim on appeal is that we should overrule our decisions in *Campbell v. Shearer,* 732 F.2d 531 (6th Cir.1984), and *Vicory v. Walton,* 721 F.2d 1062 (6th Cir. 1983), *cert. denied,* 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). These cases were based on the Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Vicory,* we held that the plaintiff has the burden of pleading and proving that state damage remedies are inadequate to redress the alleged wrong before he can resort to a damages action for a deprivation of procedural due process under 42 U.S.C. § 1983. 721 F.2d at 1065–66. The existence of an action in the state courts for forcible entry and detainer made it impossible for the plaintiff to carry this burden in *Vicory.* Likewise, the existence of a tax appeals procedure under Michigan law foreclosed the procedural due process action sought for an allegedly wrongful tax seizure in *Campbell,* 732 F.2d at 533–34.

Since plaintiff has provided no persuasive reason for us to revisit the rationale of these decisions, we conclude that these cases control the present litigation. As a result, plaintiff's § 1983 claim must fail because he did not "plead and prove" that Ohio does not provide an adequate state remedy. This is so particularly because the first count of Sproul's complaint is based on what he contends is a remedy under Ohio contract law. Since we have consistently refused § 1983 relief based on the existence of similar adequate state remedies, the district court did not err by granting summary judgment for the City of Wooster on plaintiff's claims under 42 U.S.C. § 1983.

### THE CONTRACT CLAIM

■ The most troublesome aspect of this case is plaintiff's claim under Ohio law for breach of an agreement to provide the necessary water and sewer services. The district court concluded that there was no enforceable agreement, because the City officials with whom Sproul dealt were unauthorized to bind the City in this regard. Ohio municipalities are specifically empowered by Article XVIII § 4 of the Ohio Constitution to operate public utilities, including provision of water and sewer facilities. Article XVIII § 6 of that Constitution gives an Ohio municipality additional power to provide these utilities beyond the city limits. As an initial matter, therefore, it is clear that defendant City had authority to enter into the alleged contract with Sproul. *See State ex rel. Indian Hill Acres v. Kellogg,* 149 Ohio St. 461, 79 N.E.2d 319 (1948).

Judge Thomas set out succinctly the substance of plaintiff's claim in this regard in footnote 6 of his memorandum and order filed July 8, 1986:

Plaintiff cites city ordinances 921.03 and 923.10 in support of his claim that council 'vested exclusive control over the water works and sewer system of the City in the Director of Administration.' These ordinances provide:

921.03 WATER WORKS, MAINS, CONTROL.

Council affirms that the water mains and the water works of the City are under the exclusive control of the Director of Administration, as provided for in Ohio R.C. 743.03, and that Council has the general powers of such water works as provided for in Ohio R.C. 743.01. (Ord. 1958–36. Passed 9–15–58.)

923.10 AUTHORITY OF DIRECTOR OF ADMINISTRATION.

(b) Council affirms that the sanitary sewers and the sanitary sewer system of the City are under the exclusive control of the Director as provided for in Ohio R.C. 729.50, and Council has the general powers over such sanitary sewer system as provided for in Ohio R.C. 727.01. (Ord. 1971–50. Passed 7–10–71.)

Plaintiff contended that the Director of Administration of the City of Wooster, as well as its then Mayor, had committed to him in their official capacities that the City would furnish him utility services if he petitioned for annexation of the property in question (situated almost entirely outside the City limits) and if he paid the requisite fees. Plaintiff contended, moreover, that he had an agreement for these services binding upon the City since he had carried out his part of the bargain. At first blush there is merit in this contention; one party to a proposed agreement who performs the conditions he is called upon to perform expects the other party to carry out its bargain as well. Basic considerations of equity and contract logic would seem to tip the scales towards plaintiff in such a situation.

The experienced Ohio trial judge in this case, however, observed that Ohio law requires that "[t]hose who would deal with the agents of a municipality must assume the risk that all necessary steps have been taken requisite to a legal contract," citing *Schumacher Stone Co. v. Columbus Grove*, 73 Ohio App. 557, 563, 57 N.E.2d 251 (1944). *See also McCloud & Geigle v. City of Columbus*, 54 Ohio St. 439, 44 N.E. 95 (1896), and *Kimbrell v. Seven Mile*, 13 Ohio App.3d 443, 469 N.E.2d 954 (1984). Ohio law requires plaintiffs then to "investigate the subject and ascertain at their peril ... steps leading up to a contract ... with public agencies whose powers are defined by law." *McCloud*, 54 Ohio St. at 452–53, 44 N.E. 95. While this may not

appeal to one in the position of Sproul, who seeks to rely on the actions of the Wooster Mayor and Director of Administration, Ohio law does put him at risk to ascertain the power and authority of the proper official or official body to seek to bind the City.

Judge Thomas interpreted the two Wooster ordinances relied upon by plaintiff (921.03 and 923.10) to "reserve the 'general powers' over the city water and sewer systems in the Council." He did not construe these ordinances as giving "independent" or "exclusive" authority over the water mains, sewers and water works to the Director of Administration or the Mayor despite the "exclusive control" language of the ordinances.

The district court held that control over the policy of extension of utility services outside the bounds of a municipality "is in the legislative domain." The City of Wooster had authority to enter into this kind of contract, the only question being who had the authority to bind the City to such an arrangement. *State ex rel. Indian Hill Acres v. Kellogg*, 149 Ohio St. 461, 79 N.E.2d 319 (1948). Ohio courts have indicated that this authority is placed in the city council. *See Kellogg* and *City of Stow v. City of Cuyahoga Falls*, 7 Ohio App.3d 108, 454 N.E.2d 561 (1982). We therefore conclude that there has been no express authority granted plaintiff by the City for utility connections in question and therefore no breach of contract by reason of the Mayor's agreement to this effect.[2]

There was a public hearing before Wayne County Commissioners on plaintiff's annexation motion covering the optioned property. Thereafter the Commissioners denied the annexation. There was no action taken by plaintiff in this regard within the next ten days after the denial. Mayor Breneman informed Sproul in writing that since the land in question would not be annexed, that extension of water and sewer services outside the City required Council approval. At the same time

---

**2.** On the question of apparent authority, we conclude that plaintiff cannot rely on this theory. The ordinances involved, properly construed, did not clothe the Mayor or the Director of Administration with authority to act without council approval, because the council retained "general powers" or policymaking rights under the extension in question to non-residents.

the City returned Sproul's $2,500 payment, which he declined.

There is a dispute in this case which focuses upon plaintiff's contention that then Mayor Demorest indicated it was City policy to allow a developer such as himself to obtain the utilities in question if he petitioned for annexation and did not withdraw that petition. Plaintiff contends that he did not appeal from the Commission's denial of the annexation petition because he did not think it necessary.

We agree with the district court that despite this claimed agreement, the parties were bound with regard to its enforcement by Ohio law. *Kellogg* and *Stow* indicate that extension of the type of utility service in dispute is a legislative decision. Therefore, it was necessary that the Council approve the action of the Mayor and/or Director Spitler in extending such services. Since "all legislative power [is] vested in the Council," (Article II of Wooster's charter), the Council, not the executive, had to authorize the extension of service. The duties of the Director of Administration under the City charter placed him under the supervision of the Mayor to operate all City departments, and this fell under executive authority, not legislative.

We must next consider whether the City Council itself authorized the Mayor or the Director of Administration to extend water and sewer services and facilities outside City boundaries. Wooster passed ordinances § 921.03 and § 923.10 previously cited in the district court's decision dealing with water works and the sanitary sewer system.

Again, we agree with the district court that absent a specific Ohio statutory or constitutional basis to the contrary, or Ohio judicial precedent, these ordinances do not remove or abjure the "general powers" of the City Council over water and sewer extensions to the executive branch, and, specifically, the Director of Administration. The latter may exclusively maintain and operate and set City rates for these utilities once authorized and approved by the Council, and in that sense, the Director has "control" over water mains and sanitary sewers once installed by authority of the Council.

The Council, however, specifically established as a matter of policy that sewer rental rates for nonresident users would be established at 150 per cent of the resident water rates unless otherwise established by contract. Sec. 923.04(1)(1) of Wooster ordinances. The Council followed the procedure, moreover, of passing upon contracts for service and extensions of utility service outside the city limits. Had the Council deemed the ordinances in question to surrender its authority with respect to utility services to nonresidents outside city limits, it is not logical to believe it would continue to pass upon and decide these policy matters relating to service and rates to nonresidents.

Even if a broad delegation or abdication of its authority were deemed to have been attempted by the Council under the two ordinances cited (§§ 921.03 and 923.10), we would doubt that such an attempt to delegate away its policymaking responsibilities was effectual under Ohio law. Citing Ohio Rev.Code § 731.47. In *City of Stow v. City of Cuyahoga Falls*, 7 Ohio App.3d 109, 454 N.E.2d 561 (1982), the Ohio court, noting *Kellogg, supra,* held that any conflict concerning the authority of the Mayor versus the authority of the Council with regard to extension of utility service outside the municipal bounds was to be resolved in favor of the Council or legislative body, "which has sole authority to determine policy in this area." 7 Ohio App.3d at 110, 454 N.E.2d 561.

*State ex rel. Indian Hill Acres v. Kellogg,* 149 Ohio St. 461, 79 N.E.2d 319 (1948), pointed to the power of the Cincinnati City Council alone to act in respect to matters pertaining to a continuation of water services to territories surrounding the city despite the contention that the city manager and superintendent of waterworks possessed that power. The court determined, after review of Ohio law, that this was a matter of legislative policy and that "the council has full power to act, restricted only by pertinent constitutional

and statutory limitations." 149 Ohio St. at 474, 79 N.E.2d 319.

We find the ordinances and charter provisions of Wooster do not confer express authority on the executive branch regarding power to extend water and sewer services outside the City. Any doubt in this regard should be construed against an unconditional grant of policymaking authority from the Council to the Mayor or Director of Administration.[3] *VMJ Co. v. City of Lorain,* 105 Ohio App. 166, 169, 151 N.E.2d 667 (1957), would indicate a need for a municipality specifically to *legislate* for service beyond its boundaries. Nothing in the Wooster charter would indicate that the Mayor or the Director of Administration, acting under him, had authority to act with respect to extension of City utility services.

> The charter is an authority superior to an ordinance in a charter city ... the *charter* limits, governs and controls the Council very much the same as the Constitution limits, governs and controls the General Assembly.

*Bauman v. State ex rel. Underwood,* 122 Ohio St. 269, 270, 171 N.E. 336 (1930).

The delegation of legislative authority has narrow limits in Ohio. Judge Potter Stewart (later Justice of the Supreme Court) quoted with approval in *Weber v. Board of Health,* 148 Ohio St. 389, 74 N.E.2d 331, 338 (1947), from an earlier Ohio Supreme Court decision, *City of Cincinnati v. Cook,* 107 Ohio St. 223, 224, 140 N.E. 655, 656 (1923):

> This ordinance will not stand the test applied by 1 Dillon on Municipal Corporations (5th ed.) § 224, from which we quote the following: "The principle is a plain one that the public powers or trusts developed by law or charter upon a council or governing body, to be exercised by it when and in such manner as it shall judge best, *cannot be delegated to others.*"

The purported authority or discretion upon which Sproul relied of the Wooster Mayor and Director was undefined and not prescribed by definite standards. In such a circumstance:

> It is well established by prior decisions of this court that such a delegation of power to any subordinate is unlawful unless as a part of such power standards are established by which such power is to be exercised. An uncontrolled discretion has invariably been held to be a delegation of legislative power.

*Northern Boiler Co. v. David,* 157 Ohio St. 564, 106 N.E.2d 620 (1952). *See also City of Cleveland v. Piskura,* 145 Ohio St. 144, 60 N.E.2d 919 (1945).

In sum, we conclude that the Ohio Constitution and law support the district court's conclusion that the power to extend water and sewer services outside the Wooster boundaries is legislative and it vests in the Council, not in the City officials upon whose oral commitment Sproul unfortunately relied. We also conclude that this legislative power was not effectually delegated (even if it might lawfully be done) to the Mayor and Director to decide in their discretion whether or not to extend City water and sewer services to Sproul's property outside the City. Sproul regrettably acted at his risk in relying upon the City officials instead of obtaining Wooster City Council approval. There was, in any event, no express authority granted by ordinance for the Mayor and Director to bind the City in this regard, and no authority to this effect is found in the Ohio Constitution or code, nor in the City charter. Nor is there any persuasive showing of any apparent authority vested in these officials to extend such utility services without Council approval. At the same time, we also affirm the district court's direction that the City must effect a refund of the $2,500 fee paid by Sproul.

Accordingly, we AFFIRM the decision of the district court in all respects.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring specially.

The issue which divides this panel is a close one: whether the city council, by en-

---

**3.** The very title of the Director would seem to indicate that he served as an *administrator* not an agent for the Council with direction to act in policy matters.

acting city ordinance sections 921.03 and 923.10, delegated authority over extra-territorial expansion of water and sewer lines to the administrative branch of the city's government. Although I join Judge Wellford in concluding that such legislative authority was not delegated here, I do not disagree with Judge Merritt's analysis. Rather, my vote is motivated by my belief in the political process.

Wooster, Ohio, like many small cities, faced a dilemma. The city had to decide whether to accommodate commercial development or retain its semi-rural, small-town character. Frequently, a city's inhabitants disagree about which direction their community should go. To ensure that the path preferred by a majority of the citizens is taken, policy decisions regarding such development should be made by the branch of government most responsive to the electorate, the legislative branch. Moreover, the legislative branch must be free to reverse the development policies of prior administrations, so long as such reversals do not cause the city to breach its legal obligations to outside parties.

Here, Robert Sproul, a real estate developer, relied on representations made in a private meeting by Wooster Mayor Margaret Demorest. Mayor Demorest allegedly told Sproul that it was the city's policy to extend water and sewer services if an annexation petition were filed and not withdrawn before the petition became irrevocable. Because this procedure had been followed on three previous occasions, it apparently was the development policy of Mayor Demorest's administration.

Unfortunately, before Sproul's annexation petition was formally approved, but after he had spent several thousand dollars in reliance on Mayor Demorest's representations, the city's development policy changed. After the Wayne County Commission denied Sproul's petition, Wooster's new mayor, Clyde Breneman, told Sproul that the Director of Administration of the City of Wooster was not authorized to extend water and sewer services beyond the city limits without the approval of City Council. Such approval was unlikely in

Sproul's case, apparently because the newly-constituted council no longer favored commercial development.

Sproul's breach of contract claim, therefore, hinges on whether Mayor Demorest and the Director of Administration had the legal authority to obligate the city to extend sewer and water services to non-residents. Their authority to bind the city depends on how city ordinance sections 921.03 and 923.10 are construed. Because control over a city's development policy should be reposed in the most politically-responsive branch of city government, I believe these ambiguous sections should not be read as delegating such authority to the administrative branch.

In sum, we cannot know whether Mayor Demorest's policy of extending sewer and water services beyond the city limits was a factor in her defeat at the polls. Nonetheless, I feel that the newly-elected council should be free to implement a different development policy, one that these officials believe will comport with the will of the electorate.

MERRITT, Circuit Judge, concurring in part and dissenting in part.

I agree with the Court's resolution of the antitrust and § 1983 issues. I disagree, however, with the Court's decision on the Ohio contract law issue.

I agree with the majority that the power to approve an extra-territorial expansion of city services vests in the city council *ab initio*. The facts of this case reveal a legal chain of authority in which power over the water and sewer systems was allocated in a succession of constitutional provisions, state statutes, and city ordinances. Municipalities in Ohio are specifically empowered by article XVIII § 4 of the state constitution to operate public utilities. Article XVIII § 6 of the constitution gives the municipality additional power to provide these utilities beyond the city limits. As an initial matter, therefore, it is clear that the city had authority to enter into the alleged contract with Mr. Sproul. *See State ex rel. Indian Hill Acres, Inc. v. Kellogg*, 149 Ohio St. 461, 79 N.E.2d 319 (1948). In

other words, the contract is not "ultra vires" as that term is normally used in local government law. *See* McQuillen, *Municipal Corporations* § 29.10 (1949).

Although the Ohio Constitution does not identify which municipal agent or body is vested with the authority to approve an extra-territorial extension of service, the Ohio courts have indicated that this authority is entrusted to the city council. *See State ex rel. Indian Hill Acres*, 149 Ohio St. 461, 79 N.E.2d 319; *City of Stow v. City of Cuyahoga Falls*, 7 Ohio App.3d 108, 454 N.E.2d 561 (1982). The Court of Appeals noted in *City of Stow* that this authority flows from Ohio Rev.Code Ann. § 731.47 (Baldwin 1987) which states that the legislative authority of the city has "management and control" of the city's property "except as otherwise provided." *See also* 1957 Op. Att'y Gen. 590 (1957) (legislative authority has statutory power over extra-territorial expansion of water service under § 731.47).

I do not understand, however, why the majority agrees with Judge Thomas that the city council did not "provide otherwise" by enacting sections 921.63 and 923.10 of the City of Wooster, Ohio, Codified Ordinances. Section 921.03 states that "the water mains and the water works of the City are under the exclusive control of the Director of Administration, as provided for in Ohio R.C. 743.03, and that the Council has the general powers of such water works as provided for in Ohio R.C. 743.01." Section 923.10 states that "the sanitary

sewers and the sanitary sewer system of the City are under the exclusive control of the Director as provided for in Ohio R.C. 729.50, and the Council has the general powers over such sanitary sewer system as provided for in Ohio R.C. 727.01."

These ordinances clearly delegate authority over extra-territorial expansion of water and sewer lines to the administrative branch of the City of Wooster. The meaning of the term "exclusive control" is unmistakable and unambiguous as it relates to the powers of the Director of Administration. A comparison of the cross-referenced statutes confirms this view. The council has reserved the right under § 743.01 to take possession of land necessary for the water works, and the right under § 727.01 to levy assessments for the sewer system. Conversely, the council has given the Director of Administration Power to "manage, conduct, and control" the water and sewer operations. By delegating this broad authority, the council empowered the administrative department to contract with Sproul to serve his proposed development.[1]

The majority also notes that even if such a delegation was attempted, it doubts that the council could delegate away its policy-making responsibilities in such a manner. However, the cases cited by the Court are inapposite because the majority misapprehends the nature of "policy-making" in the present case. The administrative department has not made "policy" by contracting to provide city services to a single develop-

---

1. The majority relies on Ohio cases that place the risk of loss caused by a defect in a municipal agent's authority upon the party contracting with the municipality. *See Schumacher Stone Co. v. Columbus Grove*, 73 Ohio App. 557, 57 N.E.2d 251 (1944); *McCloud & Geiglo v. City of Columbus*, 54 Ohio St. 439, 44 N.E. 95 (1896), and *Kimbrell v. Village of Seven Mile*, 13 Ohio App.3d 443, 469 N.E.2d 954 (1984). These cases are only applicable, however, if there is a defect in authority which could be discovered by the person contracting with a municipality. They are merely an application of the established agency principle that one with notice of defective authority cannot bind the agent's principal to an unauthorized deal. *See Restatement (Second) Agency* § 161 (1957). In the instant case, I would hold that there was no defect in authority. However, even if there had been a defect in

authority, the city would be bound by apparent authority. Under this doctrine, the *principal* bears the risk of loss where no notice of a special limitation on the agent's authority is given. *Id.* Although it is unnecessary here, apparent authority provides an alternative basis for liability where a municipality provides no clear notice that its agent has limited power. *Cf. City of Cincinnati v. Cameron*, 33 Ohio St. 337 (1878) (municipalities acting in proprietary capacity are governed by same rules of contractual liability as private individuals). Here, the municipality certainly provided no clear notice that its agent had limited power. Sproul could reasonably have read the ordinances in the same way that I do, *i.e.*, to delegate authority. Thus, apparent authority would also bind the city.

ment: it has simply carried out a pre-existing policy established by the council of allowing such expansion. The council has delegated to the administrative department the authority to establish water and sewer rates both inside and outside the city,[2] and empowered the administrative department to negotiate services to those who agreed to pay those rates. Thus, it was the *council*, and not the administrative department, that formulated the policy to serve all paying customers. That the council would choose to allow the administrative department to handle the time-consuming task of negotiating with individual landowners is neither surprising nor unconstitutional. It is not a reasonable interpretation of the council's action to say that it delegated to the administration the power to set extra-territorial rates while retaining for itself exclusive power to negotiate contracts to charge those rates.

Beyond the rules of agency law, the equities here clearly favor enforcement of the contract. Unlike the public contract cases cited by the city, enforcement of this contract presents no danger to the public fisc. The city is not required to spend any money to extend utilities to the development, since Mr. Sproul has already paid to construct the necessary pipelines. In fact, the city will actually make money from both tapping fees and monthly charges for water and sewer service. Measured against the $30,000 that Mr. Sproul will lose if the contract is not enforced, the city does not have a compelling hardship argument.

For the reasons stated above, therefore, I would hold that Mayor Demorest and Director of Administration Spitler had legal authority to contract with Mr. Sproul on behalf of the city for an extra-territorial expansion of water and sewer service. However, on the state of this record, we can go no further. We do not have findings of fact or conclusions of law on the scope or validity of the contract that Mr. Sproul alleges resulted from the July 1983 meeting with the city officials. We do not know, for example, whether a bargained-for exchange was contemplated by the city officials or whether the contract was required to be in writing. The District Court should be required to examine the substance of the July 1983 meeting to see if the legal formalities necessary for a binding contract under Ohio law were satisfied. Furthermore, if it found that a contract was entered into by the city and subsequently breached, the District Court should be required to fashion an appropriate remedy.

I would remand this case to the District Court for this purpose. Therefore, I respectfully dissent.

---

**2.** The city council has "pegged" the non-resident sewer rates to the water rates set by the Director of Administration for residents. Section 923.-04(1)(1) of the Wooster Codified Ordinances provides:

The sewer rental rates for resident users of the sanitary sewer system of the City are established as 100 percent of the resident water rates as established by the Director. The sewer rental rates for nonresident users of the sanitary sewer system of the City are established as 150 percent of the resident water rates as established by the Director, except as provided by contract. * * *