HUNTER ET AL., APPELLEES, *v.* CITY OF CLEVELAND, APPELLANT.

(No. 54584—Decided November 21, 1988.)

*Salvatore P. Jeffries,* for appellees.

*Marilyn G. Zack,* director of law, and *James P. Mancino,* for appellant.

NAHRA, J. The city of Cleveland is appealing the judgment of the trial court awarding (1) $7,500 to William Hunter and Willa Hunter for business damages, (2) $105,000 to Steve Davis, trustee in bankruptcy for Thermcraft Homes, Inc., and (3) $15,000 to William Hunter for negligent infliction of serious emotional distress, all as a result of the city's improper issuance of two building permits and subsequent rescission of the permits.

Thermcraft Homes, Inc. was incorporated in Ohio in April 1982, and was in the construction and real estate development business, which included erecting prefabricated modular homes. William Hunter and Willa Hunter were the sole shareholders and corporate officers of Thermcraft.

On September 17, 1982, the city of Cleveland issued two building permits to Thermcraft for the erection of two homes, one at 13514 South Woodland owned by Elaine Hamlet (the "Hamlet lot") and the other at 2946 Ludlow owned by Queen Moore (the "Moore lot"). After learning that these lots were located in the Shaker Square Historic District, the city's Division of Building and Housing voided the building permits on October 26, 1982, for the following reason: "Issued in Error. Not approved by the Landmarks Commission." Pursuant to Section 161.05[1] of the Codified Ordinances

---

[1] Section 161.05(a) provides that:

"Any application to the Division of Building for a building permit for an environmental change shall also be deemed an application for a certificate of appropriateness, and shall be forwarded to the [Landmarks] Commission, together with copies of all detailed plans, designs, elevations, specifications and documents relating thereto, within seven days after receipt thereof. An application for a certificate of appropriateness may be filed by the applicant directly with the Commission at the same time that an application for a building permit is filed or in lieu of filing for a building permit, if no building permit is required for the proposed environmental change."

of the City of Cleveland, the city referred Thermcraft's building permit applications to the Landmarks Commission.

On November 23, 1982, following a hearing, the Landmarks Commission concluded that the exterior renderings and style of home proposed by Thermcraft were inappropriate for the Shaker Square Historic District. Pursuant to Section 161.05(d)[2] of the Cleveland Codified Ordinances, the Landmarks Commission imposed a waiting period of six months in order to negotiate with Thermcraft to attempt to find a manner of compliance. After several meetings and review of design changes, the Landmarks Commission issued a "certificate of appropriateness" in June 1983 for site-built homes. Thermcraft did not build these homes and, on December 12, 1984, Thermcraft declared bankruptcy.

On July 23, 1984, the Hunters and Thermcraft filed suit against the city for the destruction of their business and the negligent infliction of emotional distress against Mr. Hunter, among other things. Prior to trial the court overruled the city's motion to dismiss the claims of the individual shareholders and motion to exclude evidence from the Landmarks Commissioners, evidence of damages concerning lots other than the Hamlet and Moore lots and evidence of damages concerning lots not owned by the Hunters or Thermcraft. The jury returned a verdict in favor of Thermcraft and the Hunters and the court entered judgment accordingly. The city timely appealed.

## I

The city's first assigned error is that:

"The court erred in allowing the jury to consider [the claims of] the individual plaintiffs, William and Willa Hunter, * * * when the city, at all times, dealt exclusively with the corporate entity, Thermcraft Homes, Inc. in granting and rescinding the building permits."

The Supreme Court of Ohio has held that "[a] plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation." *Adair* v. *Wozniak* (1986), 23 Ohio St. 3d 174, 23 OBR 339, 492 N.E. 2d 426, syllabus. Only the corporation may complain of injury to it unless the wrongful act violates a contractual or other duty owed directly to the shareholder by the wrongdoer. *Id.* at 176, 23 OBR at 341, 492 N.E. 2d at 428. Thus, a plaintiff-shareholder's claim should not be dismissed "if the pleadings state injury to the plaintiff upon an individual claim as distinguished from an injury which indirectly affects the shareholders or affects them as a whole." *Id.* The alleged injuries suffered by the Hunters in this case were a result of the alleged injuries suffered by Thermcraft and not based on any independent contract the Hunters had with the city or on any duty owed the Hunters individually. Since the Hunters' rights are merely derivative, they may only be asserted through the

---

[2] Section 161.05(d) provides in part that:

"If it [the Landmarks Commission] disapproves the application for a certificate of appropriateness, the Commission shall have the power to impose and enforce a waiting period of six months from the date of its notice of disapproval, during which period the Commission shall conduct negotiations with the applicant and any other party in an effort to find a means of preserving the property * * *."

corporation. Accordingly, this assignment of error is sustained.

## II

The city's second assigned error is that:

"The court erred in allowing the jury to consider plaintiff William Hunter's claim for negligent infliction of emotional distress where this theory was based solely upon an employee of the city negligently granting a building permit to the corporate entity of which Mr. Hunter was a shareholder and officer."

Mr. Hunter's claim for the negligent infliction of serious emotional distress stems from the city's voiding of two building permits and alleged unreasonable enforcement of various building code provisions. Again, this claim arises as a result of the alleged injuries suffered by the corporation and cannot be maintained individually. Moreover, "[i]ncidental damages such as mental anguish * * * have never been held as collectable [*sic*] by officers of a bankrupt corporation." *Adair* v. *Wozniak, supra,* at 177, 23 OBR at 341, 492 N.E. 2d at 428, fn. 1.

Even if such a claim were permitted, as a matter of law Mr. Hunter's injuries, *i.e.,* irritability, difficulty in sleeping, and lessened self-esteem, were not "serious" or "reasonably foreseeable." See *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759.

Accordingly, this assignment of error is sustained.

## III

The city's third through the last assigned errors, which will be addressed collectively, are as follows:

Assignment of Error No. 3

"The court erred in allowing plaintiffs to introduce evidence and to seek damages resulting from proceedings before the city of Cleveland Land-marks Commission (and subcommittees thereof) all occurring after the two building permits were erroneously granted and then rescinded, where plaintiff had a full and fair opportunity to argue the merits of its claims before the Landmarks Commission, where plaintiffs never appealed from the determination of the Landmarks Commission, and where there is no allegation that the Landmarks Commission was not acting lawfully in fulfilling its discretionary, quasi-judicial function pursuant to Chapter 161 of the Codified Ordinances of the city of Cleveland."

Assignment of Error No. 4

"It was error to allow plaintiffs to introduce evidence and claim damages from the city's failure to sell certain parcels of property to the plaintiff corporation where there was no evidence of any unlawful or actionable conduct by the city in connection with the failure to convey title to this property."

Assignment of Error No. 5

"It was reversible error for the court to instruct the jury that the defendant stipulated as to its negligence in rescinding the two building permits on October 26, 1982 where the city at no time stipulated its negligence in rescinding these permits and where the city had no legal alternative but to rescind these permits pursuant to Section 161.05 of the Codified Ordinances of the city of Cleveland."

Assignment of Error No. 6

"It was error to allow the jury to speculate on claims of damages which were, as a matter of law, remote, unforeseeable and did not proximately result from any actionable conduct on the part of the city of Cleveland, where:

"A. Plaintiffs were unable to establish any damages proximately resulting from reliance upon the city's

granting of a building permit for the two lots in question between September and October of 1982;

"B. Plaintiffs were unable to establish any cognizable ownership interest in many of the parcels which plaintiffs had agreed to convey to third parties, including one of the two lots for which the building permits were erroneously granted;

"C. Plaintiffs claimed damages resulting from contracts with third parties and lawsuits resulting therefrom which had no connection with any actionable conduct on the part of the city;

"D. Plaintiffs were allowed to claim lost profits although they had been in existence only six months, had no history of profits, and had never filed a corporate income tax return; and

"E. Plaintiffs' counsel was allowed to invite the jury, in closing argument, to return a substantial award in favor of plaintiffs to reimburse or make whole the many third parties who had claims and/or judgments outstanding against plaintiffs on various unrelated fraud or breach of contract claims, which resulted in an excessive award."

Assignment of Error No. 7

"The jury's award of damages was against the manifest [weight] of the evidence."

The law is well-settled that one who deals with a municipal corporation is charged with notice of all statutory limitations on the power of a municipality's agents. See *Sproul* v. *Wooster* (C.A. 6, 1988), 840 F. 2d 1267; *West* v. *Bentleyville* (Oct. 29, 1987), Cuyahoga App. No. 53764, unreported; *Kimbrell* v. *Seven Mile* (1984), 13 Ohio App. 3d 443, 13 OBR 532, 469 N.E. 2d 954. Pursuant to Chapter 161 of the Codified Ordinances of Cleveland, only the Cleveland Landmarks Commission could grant permission through a certificate of appropriateness to construct in a landmark district such as the Shaker Square Historic area. Appellees' reliance on permission by any other person or entity within the city, including the Commissioner of the Department of Community Development, Division of Building, was unreasonable. Only the Landmarks Commission had the authority to issue a building permit for construction within the Shaker Square Historic District. Appellees had the duty to investigate and appellees assumed the risk that all requisite steps were taken by the municipality to effectuate appellees' business with the city. See *Sproul, supra,* at 1270-1271; *Kimbrell, supra,* at 445, 13 OBR at 535, 469 N.E. 2d at 957. Since appellees were not entitled to rely on the building permits issued without the proper authority, appellees are not entitled to damages resulting from such reliance.

Even if appellees' claims were cognizable, appellees failed to establish as a matter of law that the city's conduct was the proximate cause of their damages and Thermcraft's demise. As real estate developers dealing with the city, appellees had the responsibility to investigate the properties, statutes and ordinances involved with the area to be developed. Had this been done, appellees would have known of the effect of the landmark district designation on certain of the lots in issue. Section 161.04(b)(5) of the city's Codified Ordinances requires the Landmarks Commission to file "a certified copy of the designation ordinance together with a notice briefly stating the fact of designation and a summary of the effects the designation will have" with the County Recorder of Deeds and the County Assessor. Moreover, plaintiffs entered into contracts on the lots in question without owning said lots and before the city issued any permits. Any losses suffered by plaintiffs were not

caused by the subsequent erroneous issuance of building permits which were correctly cancelled less than forty days later.

Accordingly, these assignments of error are sustained.

The judgment of the trial court is reversed and judgment is rendered in favor of the city.

*Judgment reversed.*

PRYATEL, C.J., and WIEST, J., concur.

MARK K. WIEST, J., of the Court of Common Pleas for Wayne County, sitting by assignment.