I–STAR COMMUNICATIONS
CORPORATION, et al.,
Plaintiffs,

v.

The CITY OF EAST CLEVELAND,
et al., Defendants.

No. 1:95CV0108.

United States District Court,
N.D. Ohio,
Eastern Division.

May 5, 1995.

Scott H. Schooler, George L. Forbes, Forbes, Forbes & Associates, Gary Cook, Cook, Riley & Smith, Cleveland, OH, for I-Star Communications Corp., Zakee A. Rashid.

James H. Hewitt, III, Ronda G. Curtis, City of East Cleveland, Dept. of Law, East Cleveland, OH, for City of East Cleveland.

Patrick Francis Roche, Sr., Davis & Young, Cleveland, OH, for Harold K. Miller, Isaac Jones, Jr., Gladys M. Walcott, Jeremiah Johnson.

### MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

I-Star Communications Corp. ("I-Star") brings this action pursuant to 42 U.S.C. § 1983 and 47 U.S.C. § 555(a) against the City of East Cleveland and city council members Harold Miller, Isaac Jones, Gladys Walcott, and Jeremiah Johnson (the "council members"). This Court's jurisdiction rests upon the federal questions raised. The council members move to dismiss, and I-Star opposes this motion. For the reasons discussed below, the motion to dismiss is granted. In addition, this Court *sua sponte* dismisses the claims against the City.

I.

The facts as alleged in the complaint follow.

In February 1990, the East Cleveland City Council enacted ordinance 4-90, which granted I-Star a fifteen year franchise for the construction and operation of a cable television system within the city. On June 16, 1992, I-Star received notice that the city council would that day consider an ordinance revoking its franchise. The council in fact enacted this ordinance that evening. I-Star then filed its complaint, captioned *I-Star Communications Corporation d/b/a I-Star Cable, et al. v. City of East Cleveland, et al.,* No. 92-CV-1231. Three days later, the mayor of East Cleveland vetoed the ordinance, and the complaint was dismissed on the parties' stipulation that it was moot. This Court, however, awarded attorneys' fees to I-Star as the prevailing party.

On March 1, 1994, the council members met to consider an ordinance that would permit I-Star to obtain financing. They did not, however, approve this ordinance. On April 8, 1994, they again met, allegedly to discuss revocation of the franchise. The council members sent to I-Star a letter asking it to take certain actions within 30 days. Subsequently, the East Cleveland law director informed I-Star that the letter was invalid because no minutes of the April 8 meeting existed. On April 28, 1994, the council members met to discuss proposing an ordinance to revoke I-Star's franchise. No notice of this meeting was provided to I-Star. On May 4, 1994, the council members attempted to introduce the proposed ordinance, but the proposal was tabled because the law director had not previously reviewed it. On May 12, 1994, the proposal was again tabled after a second attempt to introduce it.

On May 17, 1994, despite the law director's opinion that the ordinance did not comply with Ohio law, the ordinance was enacted. On May 19, 1994, I–Star challenged the ordinance before the Cuyahoga County Court of Common Pleas. The parties settled this action after the defendants agreed to cease all illegal action aimed at revoking or interfering with I–Star's franchise.

On May 17, 1994, the law director approved I–Star's $100,000.00 performance bond. On June 9, 1994, however, the city council overrode the law director's approval and notified I–Star that construction could not continue until an adequate performance bond was secured.

On September 15, 1994, I–Star obtained a $1,750,000.00 loan commitment from Bank One. The loan was to provide funds for construction of the cable system and for operating costs. Bank One required, in order to complete the loan, that I–Star provide collateral by assigning a security interest to Bank One in all of I–Star's property; this included the cable system. In order to pledge the system, I–Star is obligated under the terms of the franchise agreement to secure the approval of East Cleveland. On four separate occasions, the council members refused to take action on I–Star's request for approval, effectively denying to I–Star the loan through Bank One.

On December 31, 1994, I–Star received correspondence to the effect that, beginning on February 14, 1995, the city council was to conduct meetings concerning the review and possible termination of I–Star's franchise.

East Cleveland and the council members have treated a competing cable company, Telecable Broadcasting of America, Inc., ("TBA") more favorably than they have treated I–Star. This treatment has included approving requests for financing and failing to require TBA to provide financial information in a timely manner.

## II.

■ In deciding a motion to dismiss under Rule 12(b)(6), the Court must take the allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325–27, 111 S.Ct. 1842, 1845, 114 L.Ed.2d 366 (1991); *Dana Corporation v. Blue Cross & Blue Shield,* 900 F.2d 882 (6th Cir.1990); *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489 (6th Cir.1990). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944–45, 92 L.Ed.2d 209 (1986). The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## III.

Count I of I–Star's complaint seeks damages pursuant to 42 U.S.C. § 1983 for violations of I–Star's fifth and fourteenth amendment rights [1].

■ 42 U.S.C. § 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

There are therefore two prerequisites a plaintiff must meet to maintain an action based on § 1983: the perpetrator must have acted under color of state law, and the challenged conduct must have deprived the plaintiff of the rights, privileges, or immunities secured by the Constitution or laws of the United States. See *Haag v. Cuyahoga County,* 619 F.Supp. 262, 271 (N.D.Ohio 1985); citing *Parratt v. Taylor,* 451 U.S. 527,

---

1. In its *Response to Motion to Dismiss Complaint,* I–Star suggests that its First Amendment rights have been violated by the defendants' actions. Because this claim appears nowhere in the complaint, this Court will not consider this issue.

535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The precise allegations needed to survive a motion to dismiss turn on the nature of the deprivation the plaintiff claims to have suffered. *Haag*, 619 F.Supp. at 279.

In procedural due process cases, the plaintiff must allege that "(1) there was a deprivation of a constitutional right; (2) ... it was under color of law; and (3) the state remedy was inadequate, both in form and in substance." *Id.* The plaintiff bears the burden of pleading "that state damage remedies are inadequate to redress the alleged wrong before he can resort to a damages action for a deprivation of procedural due process under 42 U.S.C. § 1983." *Sproul v. City of Wooster*, 840 F.2d 1267, 1270 (6th Cir.1988).

A plaintiff may maintain § 1983 causes of action for two other sorts of claims: those that allege deprivation of an express constitutional guarantee, and those that allege a substantive due process violation in which "the state actor's conduct shocks the conscience." *Haag*, 619 F.Supp. at 278. The adequacy of state remedies is not relevant in this context. *Id.*, citing *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1.

Each of I–Star's claimed constitutional violations is discussed below.

A. I–Star alleges three separate violations of the Fourteenth Amendment: 1) deprivation of its rights to procedural due process; 2) deprivation of its rights to substantive due process; and 3) deprivation of its rights to equal protection of the laws. Each of these is discussed in turn.

### 1. *Procedural Due Process*

The Due Process Clause provides: "No State shall ... deprive any person of life, liberty, or property, without due process of law." In the context of procedural due process claims, the threshold inquiry is whether the complainant has been deprived of property. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Such "[p]roperty interests are not created by the Constitution,

'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); and *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

Even where a property interest exists, the state can impair that interest if it affords due process in doing so. *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Where the plaintiff alleges that the deprivation of his property was unauthorized by state law, the state need not provide predeprivation process but instead need only provide a postdeprivation remedy. *Id.*, at 128–30, 110 S.Ct. at 985; see also *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). This analysis applies to deprivations of liberty as well as to deprivations of property. *Zinermon*, 494 U.S. at 132, 110 S.Ct. at 987. The plaintiff must plead the inadequacy of state process to state a claim for violation of procedural due process rights. *National Communication Systems v. Michigan Public Service Commission*, 789 F.2d 370 (6th Cir.1986); *Sproul*, 840 F.2d at 1270; and *Vicory v. Walton*, 721 F.2d 1062 (6th Cir.1983).

I–Star alleges that the deprivation of its property interests was unauthorized by state law, albeit committed under color of state authority[2]. The complaint, however, contains no allegation to the effect that state remedies are unavailable or inadequate to remedy any deprivation of its property interests. Consequently, the complaint fails adequately to allege a violation of procedural due process rights.

### 2. *Substantive Due Process*

Substantive due process claims are those that allege a violation of a constitutional right which is implicit in the concept of ordered liberty, deprivation of which is inherently offensive to notions of fundamental fairness. See *Harrah Independent School Dis-*

---

**2.** This Court does not reach the issue of whether the defendants deprived I–Star of any property interest.

*trict v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979); *Rochin v. California,* 342 U.S. 165, 168–70, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952); and *Charles v. Baesler,* 910 F.2d 1349 (6th Cir.1990).

I–Star alleges that the arbitrary deprivation of its property rights constitutes a deprivation of a substantive due process right. However, this property interest, if any exists, must be one created by contract or by East Cleveland's quasi-contractual course of conduct toward I–Star in entering into a franchise agreement. Such a property right is "not protected by substantive due process. The Substantive Due Process Clause is not concerned with the garden variety issues of common law contract." *Charles,* 910 F.2d at 1353.

Consequently, the complaint fails to state a claim of a deprivation of substantive due process.

### 3. *Equal Protection*

The Equal Protection Clause provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." Where, as here, the claimant is not a member of any "protected" class, the claimant must demonstrate that the challenged action is not rationally related to any legitimate governmental purpose. See *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 39–40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973). In so claiming, "[i]t is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct ... [s]ome factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986).

I–Star alleges that it was treated differently than was TBA, in that TBA received more favorable treatment at the hands of the defendants than did I–Star. However, the complaint nowhere alleges that this disparity was not rationally related to any legitimate government purpose. The complaint, therefore, fails adequately to allege a violation of the rights guaranteed by the Equal Protection Clause.

B. The Fifth Amendment to the United States constitution provides in pertinent part: "private property [shall not] be taken for public use without just compensation." To constitute a "taking," a governmental action generally must involve either a physical invasion of property or a denial of all economically beneficial or productive use of property. *Lucas v. South Carolina Coastal Council,* —— U.S. ——, ——, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992). Even where a taking has occurred, a plaintiff cannot maintain a cause of action to remedy it unless he first uses the state procedures to obtain just compensation and is denied such compensation. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); and *Four Seasons Apartment v. City of Mayfield Heights, Ohio,* 775 F.2d 150 (6th Cir.1985).

Here, even assuming *arguendo* that the defendants' refusal to approve I–Star's request to pledge the cable system as security for a loan could constitute a taking, I–Star does not allege that it has attempted to utilize state procedures to seek compensation for this taking, nor has it alleged that no such adequate procedures exist. I–Star's complaint fails to state a claim under the "takings clause."

### IV.

Counts II and III of I–Star's complaint allege violations of the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 151 *et seq.* The complaint appears to allege two violations of this Act: 1) unlawful revocation of or interference with I–Star's franchise; and 2) unlawful modification of the franchise agreement. Both claims are premised upon § 555 of the Act.

Title 47 U.S.C. § 555 provides in pertinent part:

> Any cable operator adversely affected by any *final determination* made by a franchising authority under *section 541(a)(1), 545 or 546* of this title may commence an action within 120 days after receiving notice of such determination.

47 U.S.C. § 555(a) (emphasis added). Section 541(a)(1) provides:

> A franchising authority may award, in accordance with the provisions of this subchapter, 1 [sic] or more franchises within its jurisdiction; except that a franchising authority may not grant an exclusive franchise and may not unreasonably refuse to award an additional competitive franchise. Any applicant *whose application for a second franchise has been denied by a final decision* of the franchising authority may appeal such final decision pursuant to the provisions of section 555 of this title for failure to comply with this subsection.

47 U.S.C. § 541(a)(1) (emphasis added). Section 545 provides in pertinent part: "Any cable operator *whose request for modification under subsection (a) of this section has been denied by a final decision* of a franchising authority may obtain modification of such franchise requirements pursuant to the provisions of section 555 of this title." 47 U.S.C. § 545(b)(1) (emphasis added). Section 546 provides in pertinent part:

> Any cable operator *whose proposal for renewal has been denied by a final decision* of a franchising authority made pursuant to this section, or *has been adversely affected by a failure of the franchising authority to act in accordance with the procedural requirements* of this section, *may appeal such final decision or failure* pursuant to the provisions of section 555 of this title.

47 U.S.C. § 546(e)(1) (emphasis added).

■ I-Star has not alleged that it has applied for a second competitive franchise, and that such an application has been denied by any final decision of East Cleveland. Although I-Star suggests that TBA is the beneficiary of an "exclusive" franchise because TBA has been treated more favorably than has I-Star, § 541(a)(1) requires that I-Star's application for a franchise be denied before I-Star can maintain an action for violation of that section. I-Star has not stated a claim under § 541(a)(1).

■ I-Star also fails to allege that it has made any request for a modification of its franchise agreement, and that its request has been denied by a final decision. Instead, I-Star suggests that East Cleveland has modified the agreement by, *inter alia,* refusing to approve I-Star's plan to pledge the cable system as security for a loan. Section 545 does not create a right of action to remedy this situation, so I-Star's allegations are insufficient to state a claim under § 545.

■ I-Star alleges that the council members sent to I-Star a notice regarding the "possible cancellation" of its franchise agreement. I-Star also admits in its complaint that its agreement is not due for renewal until fifteen years after its inception; that is, until 2005. Consequently, I-Star has not alleged facts in support of its claim that East Cleveland has made a final decision not to renew I-Star's franchise. Although I-Star complains of various procedural irregularities concerning East Cleveland's notice of "possible cancellation" and its refusal to approve I-Star's financing plan, I-Star has not alleged any fact in support of a claim that the procedures outlined in § 546 for renewal determinations have been avoided by any of the defendants. Section 546 requires one of these two elements—that I-Star's request to renew has been finally denied or that the renewal procedures have been violated to I-Star's detriment. Because the complaint lacks any allegation proof of which would establish the presence of either element, the complaint does not state a claim under § 546.

Section 555, on its face, provides a right of action only for a violation of §§ 541, 545, and 546. Because the complaint fails to state a claim under any of those sections, the complaint necessarily fails to state a claim under § 555.

### V.

East Cleveland does not move to dismiss the complaint against it. Notwithstanding this, the complaint fails to state any claim against the City for the same reasons it is deficient as against the individual council members. I-Star had the opportunity to, and did, address the arguments raised by the council members in their motion. Thus, the issue of the complaint's adequacy was fully briefed.

Accordingly, this Court dismisses the complaint against the City as well as against the council members.

## VI.

The complaint fails to state a claim under either 42 U.S.C. § 1983 or 47 U.S.C. § 555. Accordingly, the defendants' motion to dismiss is granted, the complaint as against the City is dismissed *sua sponte,* and judgment is entered in favor of the defendants.

This order is final and appealable.

IT IS SO ORDERED.