VILLAGE OF LUCAS, APPELLEE, *v.*
LUCAS LOCAL SCHOOL DISTRICT ET AL., APPELLANTS.

[Cite as Lucas *v.* Lucas Local School Dist. (1982), 2 Ohio St. 3d 13.]

(No. 82-98—Decided December 8, 1982.)

*Baran & Baran Co., L.P.A., Mr. Edward C. Baran* and *Mr. Raymond M. Donadio, Jr.,* for appellee.

*Mr. Donald C. McGee,* for appellants Lucas Local School District et al.

*Messrs. Thompson, Hine & Flory, Mr. Paul W. Brown, Mr. William R. Case, Mr. Robert P. Mone, Messrs. Thornton & Harwood* and *Mr. David B. Harwood,* for appellant Firelands Electric Cooperative.

*Bell & Clevenger Co., L.P.A.,* and *Mr. John W. Bentine,* urging affirmance for *amicus curiae,* Ohio Municipal Electric Association.

CELEBREZZE, C.J. In 1912 the people of Ohio amended their Constitution to include Section 4, Article XVIII, which states:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

The language of this provision is clearly a grant of power and not a limitation of authority.[1] In fact, the first cases interpreting this provision described the municipal powers over utilities as "plenary." *E.g., Dravo-Doyle Co.* v. *Orrville* (1915), 93 Ohio St. 236, paragraph one of the syllabus; *Billings* v. *Cleveland Railway Co.* (1915), 92 Ohio St. 478. The Home Rule Amendments, Section 4 included, are examples of the people taking a governmental function from one body and placing it under the auspices of another. In this case, municipalities were awarded jurisdiction over public utilities which formerly rested in the domain of the General Assembly.

As stated in *Cleveland* v. *Pub. Util. Comm.* (1921), 102 Ohio St. 341:

"I hold that the express grant of power in Sections 4 and 5 of Article XVIII, the power to contract, is an exclusive grant of power. While there are no words expressly excluding other branches of the government, or other agencies of the government, from exercising this power, that [conclusion] follows as a matter of necessary implication from the former decisions of this court. That necessary implication arises from these elementary principles — what the sovereign people *do* by their *constitution,* their subordinate, the legislature, may not *undo* by *statute,* else the agent in government is more powerful than his principal." *Id.* at 358 (Wanamaker, J., dissenting, emphasis *sic*).

---

[1] Prior to the passage of the Home Rule Amendments, of which Section 4 is a part, a municipality was dependent upon a statutory grant of authority to contract with a public utility. See Vaubel, Municipal Home Rule in Ohio, 3 Ohio North. L. Rev. 1, at page 1466, Section 147, and cases analyzed therein. That being the case, the obvious purpose of this section is to provide the municipalities with the comprehensive authority to deal with public utilities.

That this proposition is the prevailing law in Ohio is evident from a long line of prior cases from this court. See, *e.g.*, *Swank* v. *Shiloh* (1957), 166 Ohio St. 415 [2 O.O.2d 401], paragraph one of the syllabus; *State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313, 316 [4 O.O.2d 369]; *Canton* v. *Whitman* (1975), 44 Ohio St.2d 62, 67 [73 O.O.2d 285]; *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St.2d 427, 431 [12 O.O.3d 361]; and *Columbus* v. *Power Siting Comm.* (1979), 58 Ohio St.2d 435, 440 [12 O.O.3d 365].

In *Columbus* v. *Power Siting Comm., supra,* we stated at page 440:

"To permit the Power Siting Commission to determine appellee's need for a utility, as well as the public service to be provided by, and convenience of, the facility constitutes a direct and substantial interference with the city's home rule authority under Section 4 of Article XVIII. Such determinations must fall within the *exclusive* province of municipalities if home rule is to retain vitality." (Emphasis added.)

Accordingly, we expressly hold that the contracting for public utility services is exclusively a municipal function under Section 4, Article XVIII, of the Ohio Constitution.

However, because several cases have held that the constitutional grant of power in Section 4, Article XVIII, may yield to some legislative acts of statewide concern, our inquiry does not end at this point. For example, in *Canton* v. *Whitman, supra,* we held that state law regulating the fluoridation of water did not limit the ownership or operation of a municipal waterworks. See, also, *State, ex rel. Klapp,* v. *Dayton P. & L. Co.* (1967), 10 Ohio St. 2d 14 [39 O.O.2d 9], and *Columbus* v. *Teater* (1978), 53 Ohio St. 2d 253 [7 O.O.3d 410]. By the same token, we have held on several occasions that the powers granted by Section 4, Article XVIII, were paramount. See *Columbus* v. *Pub. Util. Comm., supra; Columbus* v. *Power Siting Comm., supra;* and *State, ex rel. McCann,* v. *Defiance, supra.*

In *Columbus* v. *Teater, supra,* our role was outlined in controversies between Section 4, Article XVIII, and conflicting state legislation. We said at page 261:

"Ultimately, the judiciary must determine the facts in such controversies, balance the rights of the state against those of the municipality and endeavor to protect the respective interests of each. In such instances, the outcome of the constitutional argument involved will depend upon the facts and circumstances of the case."

Turning to the facts of the case at bar, the issue becomes whether the action of the board of education substantially interferes with the power of the municipality to contract for public utility services.

The General Assembly has granted local boards of education broad powers of control over public schools. In particular, R.C. 3313.37 gives boards of education the authority to construct, repair and furnish school buildings as well as the authority to purchase the necessary real estate. Additionally, R.C. 3313.47 vests the management and control of the schools in the boards of education. We may thus presume for the purpose of this decision

that the Lucas Local School District Board of Education acted within its legislatively granted authority when it resolved to contract with Firelands for electric service.

We believe that in the case *sub judice*, the resolution by this board of education, if allowed to stand, would severely interfere with the municipality's constitutionally granted right to contract for public utility services. It is undisputed that the school system is the village's single largest electric consumer. Further, Firelands has not received or sought permission from the village to supply electric power to the school system and seeks to circumvent obtaining a franchise from the municipality. If we were to sanction the board of education's contract with Firelands, we would be allowing an agent of the state government to usurp a function within the exclusive domain of municipal governments. It was stated in *United Fuel Gas Co.* v. *Ironton* (1923), 107 Ohio St. 173:

"Now the *right to contract* presumes the companion right to *refuse to contract,* and the constitutional right to refuse to contract is clearly nullified if the general assembly may grant a statutory right to contract to some board or commission." *Id.* at 200 (Wanamaker, J., dissenting, emphasis *sic*).

It has been previously stated that municipalities have the exclusive power to contract for public utility services. This exclusive power necessarily presumes that while being able to grant public utility franchises, a municipality may likewise exclude a public utility from serving its inhabitants. It follows that, without permission from the municipality, Firelands is prohibited from supplying electrical service to the Lucas Local School District.

Therefore, we hold that a board of education, acting under the authority of R.C. Chapter 3313, is prohibited from contracting for public utility services absent the express consent of the municipality, where such a contract would substantially interfere with the power of the municipality to control the public utilities which serve its inhabitants.

Accordingly, the judgment of the court of appeals is affirmed.[2]

*Judgment affirmed.*

W. BROWN, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

SWEENEY, J., not participating.

---

[2] Both parties have made extended references to a number of statutes in arguing their respective positions. *E.g.* R.C. 743.01 *et seq.* and R.C. 4933.01 *et seq.* In the analysis of the constitutional provision before us, we find these statutes neither helpful nor particularly relevant. It is the role of the judiciary to interpret our constitution and such interpretation does not rise or fall upon the view of the General Assembly.