**VILLAGE OF GRAFTON, Appellee,**

**v.**

**OHIO EDISON COMPANY et al., Appellants.**

[Cite as *Grafton v. Ohio Edison Co.* (1995), 100 Ohio App.3d 327.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 94CA005877.

Decided Feb. 1, 1995.

328

Richard G. Lillie, for appellee.

David Kutik and Daniel Batista, for appellants.

BAIRD, Presiding Judge.

This cause comes before the court upon the appeal of defendants-appellants Ohio Edison Company ("Ohio Edison"), Design Management Company ("Design Management"), and Rite Aid of Ohio, Inc. ("Rite Aid") from the decision of the Lorain County Common Pleas Court denying their motion for summary judgment with respect to claims by the village of Grafton ("Grafton") for injunctive and declaratory relief and granting Grafton's motion for summary judgment on its claim for declaratory judgment and on Ohio Edison's counterclaim for tortious interference with Ohio Edison's potential business. We affirm.

From 1962 until 1987, Ohio Edison provided electric service to consumers in Grafton pursuant to a franchise granted to it by Grafton. Ohio Edison's franchise expired in 1987 and was not renewed by Grafton. Grafton now provides electric service to its citizens through its own electric department, although Ohio Edison continues to serve many of the Grafton customers it had served prior to 1987.

In 1992 and 1993, without the consent of Grafton, Ohio Edison entered into agreements with, and began furnishing electricity to, Design Management and Rite Aid in Grafton. In order to supply such service, Ohio Edison extended service lines from its main distribution line to the Design Management and Rite Aid buildings.

On December 10, 1992, Grafton filed an action for injunctive and declaratory relief and damages relating to the electric service provided by Ohio Edison to Design Management and to Rite Aid. Ohio Edison and Design Management filed counterclaims against Grafton. Ohio Edison's counterclaim sought damages as the result of Grafton's tortious interference with Ohio Edison's prospective business relations.

Grafton moved for summary judgment on its claims and on all counterclaims. Defendants moved for summary judgment on Grafton's claims and on all counterclaims except Ohio Edison's tortious interference claim. On May 26, 1994, the court granted Grafton's motion for summary judgment on its claim for declaratory relief and on Ohio Edison's counterclaim for tortious interference and denied defendants' motion for summary judgment on Grafton's claims. The court found that Grafton could compel Ohio Edison to cease service to Design Management and to Rite Aid because Ohio Edison initiated service to both after expiration of its franchise with Grafton.

Appellants brought this appeal, asserting a single assignment of error:

"The court of common pleas erred by granting plaintiff's motion for summary judgment on plaintiff's claim for declaratory relief and on defendant Ohio Edison

Company's claim for tortious interference and by denying defendants' motion for summary judgment on plaintiff's claims, notwithstanding Ohio Revised Code Sections 4905.20 and 4905.21 which prohibit any action by a municipality to require a utility to abandon or withdraw service without a prior order from the Public Utilities Commission of Ohio."

■ Appellants argue that the trial court erred by drawing a distinction between customers served by Ohio Edison before its franchise expired in 1987 and those it served without permission of Grafton thereafter. They maintain that the Miller Act (R.C. 4905.20 and 4905.21) expressly prohibits a municipality from bringing an action requiring a utility to stop service if the municipality has not obtained an order from the Public Utilities Commission of Ohio ("PUCO") first.

R.C. 4905.20 provides that:

"No railroad * * * and no public utility * * * furnishing service or facilities within this state, shall abandon or be required to abandon or withdraw any main track or depot of a railroad, or main pipe line, gas line, telegraph line, telephone toll line, electric light line, * * * or any portion thereof, * * * of a public utility, or the service rendered thereby, which has once been laid, constructed, opened, and used for public business, nor shall any such facility be closed for traffic or service thereon, therein, or thereover except as provided in section 4905.21 of the Revised Code."

R.C. 4905.21 requires that "any political subdivision desiring to abandon, close, or have abandoned * * * all or any part of any line * * * referred to in section 4905.20 of the Revised Code" must apply to the PUCO in writing before taking any such action.

Grafton did not apply to the PUCO before seeking injunctive relief relative to the power provided to Design Management and to Rite Aid by Ohio Edison. The trial court found that such application was not required because Grafton was merely exercising the power granted to it by Section 4, Article XVIII of the Ohio Constitution, which provides that:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service."

Appellants argue that Section 4, Article XVIII of the Ohio Constitution is subordinate to the Miller Act. In considering the merits of appellants' argument, we must determine, as a threshold matter, whether the Miller Act applies at all to the controversy before us. We find that it does not.

With respect to electric utilities, R.C. 4905.20 applies only to "main" pipe lines, "main" electric lines, or "any portion thereof" which provide service, and not to "any" line laid by an electric utility. In considering, with respect to railroads, the predecessor statutes to the Miller Act, G.C. 504–2 and 504–3, the Supreme Court of Ohio upheld a ruling of the PUCO which found that its jurisdiction did not extend to "side track, spurs or other track." *Toledo v. Pub. Util. Comm.* (1939), 135 Ohio St. 57, 62, 13 O.O. 329, 331, 19 N.E.2d 162, 164. In *Toledo*, the spur track at issue serviced "nine concerns," and was agreed by the parties to be used for a "limited purpose." *Id.* at 59, 13 O.O. at 330, 19 N.E.2d at 163. The court considered whether the word "main" in the statute modifies only "track" and whether the words "or any portion thereof" modifies the words "of a railroad," and what the words "any part of such line or lines" were intended to modify. *Id.* at 61, 13 O.O. at 331, 19 N.E.2d at 163. The court concluded that, because the legislature amended the original wording of the statute to delete the words "side track," "spur," and "other track," and inserted the words "any main track or tracks," it intended the PUCO to have jurisdiction only over "main track or tracks" and did not intend such jurisdiction to extend to "spurs." *Id.* at 62, 13 O.O. at 331, 19 N.E.2d at 164.

In the case *sub judice*, Ohio Edison extended two "service lines" from its "distribution line" in order to serve only two customers. As with *Toledo*, the lines had a "limited purpose." They serviced only two customers as compared to the spur track in *Toledo* which serviced nine. They were not "main" lines, but service lines, and as such were lines to which the Miller Act was not intended to apply.

Moreover, the service lines were constructed after Ohio Edison's franchise had expired. This is not a case, like many cited by the appellants, in which main lines or facilities installed during a franchise were ordered removed following the termination of a franchise. This is a simple matter of Ohio Edison choosing to bypass Grafton's constitutional power as granted in Section 4, Article XVIII of the Ohio Constitution, in order to pursue new business without authority. We cannot believe that, in enacting the Miller Act, the legislature intended to condone such usurpation of a municipality's constitutional right.

In *Lucas v. Lucas Local School Dist.* (1982), 2 Ohio St.3d 13, 2 OBR 501, 442 N.E.2d 449, the Supreme Court of Ohio considered facts similar to those of the case *sub judice*. The village of Lucas, pursuant to its constitutional power, purchased electricity from Ohio Edison, which Lucas, in turn, sold to residents of the village. The village's largest customer was the Lucas Local School District. The school district's board of education decided to purchase the district's electricity in the future from Firelands Electric Cooperative, and the village sought an injunction banning such direct purchase. The court found that the Home Rule

Amendments to the Ohio Constitution, of which Section 4, Article XVIII is a part, grant to municipalities the exclusive right to contract for public utility services and that the action of the board of education substantially interfered with the village's power. Noting that Firelands neither sought nor received permission from the village, the court held that the board was prohibited from contracting for public utility service without the express authority of the village. *Id.* at 16, 2 OBR at 503, 442 N.E.2d at 452.

▇▇▇ With respect to denial of appellants' motion for summary judgment and the award of summary judgment to Grafton, a reviewing court must apply the same standard of review as that used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122. Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 977, fn. 1.

Appellants admit that there are no issues of material fact in the case before us. Ohio Edison admits that it erected service lines to Design Management and to Rite Aid after its franchise from Grafton had expired. Pursuant to *Toledo v. Pub. Util. Comm., supra,* 135 Ohio St. 57, 13 O.O. 329, 19 N.E.2d 162, Grafton was not required to seek the approval of PUCO before ordering that such limited service be discontinued. Pursuant to *Lucas v. Lucas Local School Dist., supra,* 2 Ohio St.3d 13, 2 OBR 501, 442 N.E.2d 449, Ohio Edison's action with respect to Design Management and Rite Aid usurped Grafton's exclusive constitutional authority to contract for the utility services of its residents.

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

MILLIGAN and FARMER, JJ., concur.

JOHN R. MILLIGAN, J., retired, of the Fifth Appellate District, sitting by assignment.

SHEILA G. FARMER, J., of the Fifth Appellate District, sitting by assignment.