[Cite as *Pioneer v. Williams Cty. Bd. of Commrs.*, 2025-Ohio-497.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

Village of Pioneer, et al.

    Appellees

v.

Williams County Board of
Commissioners

    Appellant

Court of Appeals No.  WM-24-007

Trial Court No.  23CI000129

**<u>DECISION AND JUDGMENT</u>**

Decided: February 14, 2025

* * * * *

Thomas A. Thompson, for appellee, Village of
Pioneer.

Russell J. Kutell, Stephen P. Samuels, and Christina
Wieg, for appellee, AquaBounty Farms Ohio LLC.

Aaron M. Glasgow and Dale D. Cook, for appellant.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from the judgment by the Williams County Court of Common Pleas which, under R.C. 2506.04, reversed the administrative decision of appellant, Williams County Board of Commissioners, denying coappellee, the village of Pioneer, Ohio, its third application for a right-of-way ("ROW") permit. The village sought to place in a one-mile portion of County Road "S" in Williams County, Ohio, a raw water line and a wastewater/stormwater line by the village's new Water

Transmission Utility.[1] The initial customer of the Water Transmission Utility would be coappellee AquaBounty Farms Ohio, LLC, a salmon-farming business. For the reasons set forth below, this court affirms the judgment by the common pleas court.

{¶ 2} By way of background, appellant denied three separate ROW-permit applications submitted by the village to place utility transmission lines in County Road "S," also referred to as a highway easement.[2] The record does not contain appellant's underlying legal or statutory authority, nor the criteria invoked, to grant or deny either these particular ROW-permit applications or any ROW-permit application submitted by others. Neither appellee appealed to the common pleas court the first denial by appellant, but they each then appealed to the common pleas court the second[3] and third[4] denials by appellant. No statutory eminent domain/appropriation/condemnation proceedings by the village to occupy the ROW is an issue in this matter. This appeal solely concerns the common pleas court's reversal on January 17, 2024, of appellant's denial of the village's third ROW-permit application.

---

[1] The permit form is entitled, "Permit to Work Within County/Township Road Right-of-Way Limits."

[2] The first ROW-permit application, filed on June 21, 2022, was denied on September 1, 2022. The second ROW-permit application, filed on February 15, 2023, was denied on March 9, 2023. The third ROW-permit application, filed on April 26, 2023, was denied on October 5, 2023.

[3] The village's appeal was assigned case No. 23CI000139, and AquaBounty's appeal was assigned case No. 23CI000140. On October 25, 2023, the parties agreed, and the common pleas court approved, to stay those appeals.

[4] The village's appeal was assigned case No. 23CI000129, and AquaBounty's appeal was assigned case No. 23CI000130. On October 25, 2023, the parties agreed, and the common pleas court approved, to consolidate those appeals into case No. 23CI000129.

2.

**{¶ 3}** Appellant timely filed this appeal setting forth three assignments of error:

1.    The trial court erred in the absence of any legal or statutory authority in holding that the Village, as an alleged public utility, was entitled over the County's objections, to construct a pipeline in the County ROW.
2.    The trial court erred in not holding that the Village's administrative appeals were barred by res judicata.
3.    The trial court abused its discretions in holding that the Village was operating a public utility.

## I. Standard of Review

**{¶ 4}** Our role in this appeal is distinctly different from that of the court of common pleas in its appellate role reviewing appellant's administrative order denying the village's third ROW-permit application.

**{¶ 5}** The decisions of administrative agencies, such as appellant's administrative order to deny the third ROW-permit application, are directly appealable to a court of common pleas under R.C. 2506.01, which acts as an appellate court under R.C. 2506.04. *Shelly Materials, Inc. v. City of Streetsboro Planning & Zoning Commission*, 2019-Ohio-4499, ¶ 12. R.C. 2506.04 lists six grounds for a common pleas court to reverse an administrative order, any one of which is sufficient justification: unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. *Id.*

**{¶ 6}** Once the Williams County Common Pleas Court made its decision under R.C. 2506.04, then a party may appeal to this court:

> A party who disagrees with a decision of a court of common pleas in an R.C. Chapter 2506 administrative appeal may appeal that decision to the court of appeals but only on "questions of law." R.C. 2506.04. For this

3.

reason, we have stated that under R.C. 2506.04, an appeal to the court of appeals is "more limited in scope" than was the appeal to the court of common pleas. While the court of common pleas is required to examine the evidence, the court of appeals may not weigh the evidence. Apart from deciding purely legal issues, the court of appeals can determine whether the court of common pleas abused its discretion, which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence. (Citations omitted.)

*Id.* at ¶ 17. "In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance." *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 30.

{¶ 7} In our role to review a question of law under R.C. 2506.04, we do so de novo. *Id.* at ¶ 25.

{¶ 8} In reviewing whether the common pleas court abused its discretion in deciding that appellant's denial of the third ROW-permit application was not supported by reliable, probative, and substantial evidence, we are guided by these definitions:

"The evidence required . . . can be defined as follows: (1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value."

*Fox v. Bd. of Education of the Huron City School Dist.*, 2017-Ohio-7984, ¶ 22 (6th Dist.), quoting *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992) (reviewing identical language in R.C. 119.12). An abuse of discretion occurs when the common pleas court exercises its judgment, in an unwarranted way, regarding a matter

4.

over which it has discretionary authority. *Halbeisen v. Fantozz*, 2023-Ohio-4340, ¶ 7 (6th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

## II. Analysis

{¶ 9} We will address appellant's assignments of error out of order.

### A. Res Judicata

{¶ 10} In support of its second assignment of error, appellant argues that because appellees failed to appeal the first ROW-permit application denial, the subsequent appeals are barred by the doctrine of res judicata, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), syllabus ("A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."). A "transaction" is defined as having "a 'common nucleus of operative facts.'" (Citation omitted.) *Id.* at 382. Appellant concludes that res judicata applies because the changes between the first ROW-permit application and the third application was merely "incidental" with a consistent framework on the merits: constructing water and wastewater pipes between to private property owners for two private uses.

{¶ 11} In response, appellees argue that where appellant failed to conduct a hearing before denying the first application, res judicata does not bar the appeal of this third ROW-permit application denial. Citing *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 2009-Ohio-1704, ¶ 29-30 and *In re Lima Mem. Hosp.*, 111 Ohio App.3d 225, 229 (10th Dist.1996), appellee argues that in the absence of a quasi-judicial

5.

administrative hearing where the parties had ample opportunity to litigate the issues, the merits of those issues were not definitively resolved and res judicata does not apply.

{¶ 12} The common pleas court agreed with appellees, citing *State ex rel. Westchester Estates, Inc. v. Bacon*, 61 Ohio St.2d 42, 45 (1980) and *Rossow v. Ravenna*, 2002 WL 480061, *3 (11th Dist. Mar. 29, 2002). The court determined the third ROW-permit application was a material change in the facts from the first ROW-permit application such that the doctrine of res judicata did not apply:

> The first application was denied because the pipeline was not a public utility. The third application involved a public utility agreement term sheet and Pioneer's Water Transmission Utility. The court finds that both of these would have been relevant to the resolution of the material issue as to whether the two lines constituted a public utility, and hence there are changed circumstances. Therefore, res judicata does not bar consideration of the third application.

{¶ 13} The common pleas court further determined that because the denial of the first ROW-permit application did not involve a quasi-judicial administrative proceeding on the merits, the doctrine of res judicata did not apply, citing *Grava* at 381 and *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 2009-Ohio-1704, ¶ 29:

> After the first application was submitted neither Pioneer nor AquaBounty had the opportunity to present additional evidence before the commissioners to listen to the commissioners' concerns and attempt to address them. Pioneer and AquaBounty did not have "ample opportunity" to litigate the issues involved. Therefore, again, res judicata does not bar consideration of the third application.

{¶ 14} The application of the doctrine of res judicata is a question of law we review de novo. *Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 21. Although under de novo review we do not give deference to the lower court's decision, upon our review of the

6.

record and the law applicable to this case, we find no error in the common pleas court's discussion and opinion that res judicata does not apply and hereby adopt it. *See Toledo v. Emery*, 2003-Ohio-2525, ¶ 6 (6th Dist.).

{¶ 15} Appellant's second assignment of error is not well-taken.

### B. Whether the Water Transmission Utility is a "Public Utility"

{¶ 16} In support of its third assignment of error, appellant argues that the Water Transmission Utility is not a "public utility" operated by the village. Rather, appellant argues the Water Transmission Utility is a private arrangement between the village and AquaBounty to benefit only them. Citing *Englewood v. Miami Valley Lighting, L.L.C.*, 2009-Ohio-1631 (2d Dist.), appellant argues under common law the determination of whether the Water Transmission Utility is a "public utility" is a mixed question of law and fact to be decided on the particular facts and circumstances. Appellant argues the most important factor against finding the Water Transmission Utility is a "public utility" is the nature of the ultimate service provided: private raw water and wastewater disposal. "And while there is little question that the provision of water and/or wastewater disposal would be public utility use, the Village is providing neither in this case. Here, the Village has merely agreed to own and maintain pipelines that connect AquaBounty with another private property owner, Kidston Consultants,[5] for their private use." Appellant concedes

---

[5] Kidston Consultants, LTD. was not a party to the common pleas appeal, nor to this appeal. Kidston is a local property owner who operates a well field to supply raw water to various properties, including to AquaBounty. AquaBounty will use one-half capacity of the Water Transmission Utility's water line to receive the raw water. Kidston, with access to a discharge point at the East Branch of the St. Joseph's River, will then receive treated

7.

that if the Water Transmission Utility were a "public utility," then it would readily approve the third ROW-permit application. However, as a private utility, appellant had the unfettered discretion to deny the village's third ROW-permit application.

{¶ 17} In response, appellees argue the village-created Water Transmission Utility is a "public utility" as a matter of law under the Ohio Constitution and under common law, citing *Pfau v. City of Cincinnati*, 142 Ohio St. 101 (1943), paragraphs one and two of the syllabus; *Lucas v. Lucas Local School Dist.*, 2 Ohio St.3d 13, 13-14 (1982), paragraph one of the syllabus; and *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees*, 64 Ohio St.3d 385, 388 (1992). Appellees argue the fact that AquaBounty will be the sole initial customer of the Water Transmission Utility is not fatal, but a reasonable expectation with a newly established public utility.

{¶ 18} Appellees point to the undisputed fact that the village created the Water Transmission Utility under its home rule authority from Ohio Constitution Article XVIII, Section 4, and enacted Ordinance No. 6-2023 on May 23, 2023, which became effective on June 23, 2023. The Water Transmission Utility will have two divisions, a "Raw Water Transmission" division and a "Wastewater/Stormwater Transmission" division. As stated in the ordinance, AquaBounty will design and construct, subject the village approval, the Water Transmission Utility facilities, and donate them to the village to own and operate

wastewater from AquaBounty, among others. AquaBounty will use one-half capacity of the Water Transmission Utility's wastewater line to send the treated wastewater to Kidston.

8.

pursuant to a Public Utility Agreement Term Sheet with AquaBounty and approved by the village council on April 25, 2023.

{¶ 19} Before the common pleas court determined that, "Whether a business can be deemed a public utility is a mixed question of law and fact" and concluded that the Water Transmission Utility was a "public utility" under common law, it rejected appellees' argument that the Water Transmission Utility was a "public utility" under the Ohio Constitution. The common pleas court determined that appellant "conceded that pursuant to Ohio Constitution Article XVIII, Section 4 and related case law a village can create and operate a public utility. Contrary to Pioneer's assertion, a village creating an entity and calling it a public utility does not make it so." We disagree with the trial court's conclusion. However, that does not change the result in this case.

{¶ 20} The village has the authority under its power derived from Ohio Const., art. XVIII, § 4, to self-declare its legislative action to establish a "public utility" entity called the Water Transmission Utility, with both raw water and wastewater/stormwater divisions, where the facilities, designed and constructed by others under village approval, will eventually be owned and operated by the village. *Bd. of Cnty. Commrs. of Delaware Cnty. v. City of Columbus*, 26 Ohio St.3d 179, 180-82 (1986) (a municipality has self-executing public utility powers under Ohio Const., art. XVIII, § 4), citing *Britt v. City of Columbus,* 38 Ohio St.2d 1, 8 (1974) and *Mead-Richer v. Toledo*, 114 Ohio App. 369, 374 (6th Dist.1961).

9.

{¶ 21} The Ohio Supreme Court has long held that a municipality, which includes a village, receives a clear grant of "plenary" power, not a limitation of authority, under Ohio Const., art. XVIII, § 4. *Lucas v. Lucas Local School Dist.*, 2 Ohio St.3d 13, 14 (1982). "In this case, municipalities were awarded jurisdiction over public utilities which formerly rested in the domain of the General Assembly." *Id.* "The Ohio Constitution authorizes a municipality to provide water service to its residents to the exclusion of other providers." *Ottawa Cty. Bd. of Commrs. v. Marblehead*, 86 Ohio St.3d 43, 45 (1999). In this matter the village will acquire by contract, not by condemnation proceedings, the facilities of the Water Transmission Utility from AquaBounty. "The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility." *Id.*, quoting Ohio Const., art. XVIII, § 4. It is undisputed that AquaBounty is located in the village limits and, therefore, an inhabitant of the village. Under Ohio Const., art. XVIII, § 4, the village has the clear constitutional authority to acquire by contract the transmission facilities of water and wastewater/stormwater utilities to serve its inhabitants. *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 511 (1996); *Pfau*, 142 Ohio St. at 103-04.

{¶ 22} Upon de novo review, we find appellant's third assignment of error is not well-taken.

10.

## C. Whether the Water Transmission Utility is Entitled to Occupy ROW

{¶ 23} In support of its first assignment of error, appellant argues the common pleas court erred as a matter of law when it determined that the village's alleged "public utility" was entitled to occupy appellant's ROW. Appellant argues the common pleas court agreed with it that no statute, regulation, or court decision gives any public utility the right to use a governmental right of way, but then erroneously said not only was the village's Water Transmission Utility a "public utility," but that it was entitled to occupy appellant's ROW. Appellant argues that even if it concedes the Water Transmission Utility is a "public utility" in this instance, appellant is not legally or statutorily compelled to allow it "to use the road ROW for a non-ROW, public utility related purpose." Appellant does not identify the underlying legal or statutory authority, nor the criteria invoked, to grant or deny any ROW-permit application. Nevertheless, appellant argues the "mere fact that permits were issued for more traditional public utilities to utilize the road ROW in the past does not compel the Board to exercise its discretion in favor of granting the permit when the Board is faces with a wholly different and private arrangement. . . . Thus, it is irrelevant what the Board did in the past for the electric or water companies which are actual regulated and designated public utilities."

{¶ 24} In response, appellees argue the common pleas court did not abuse its discretion when it determined that appellant shall approve the third ROW-permit application for the Water Transmission Utility lines to occupy a portion of County Road "S." Citing *4D Investments, Inc. v. City of Oxford*, 1999 WL 8357, *2 (12th Dist. Jan. 11,

11.

1999), appellees argue appellant "was not permitted to deny the Village's ROW permit based on random choice or personal whim." Appellees point to appellant admitting in the record that if the transmission lines were a "public utility," the third ROW-permit application would be approved. Appellees also point to appellant admitting in the record that the plans submitted with the third ROW-permit application comply with state and county engineering standards, subject to EPA approvals, which appellees obtained. Appellees also point to appellant admitting in the record that it "has allowed other public (and private) entities to utilize its ROW for sewer, water, stormwater, cable, electricity, and natural gas." Appellees conclude that where appellant failed to establish a "paradigm" for allowing third parties to use its highway easements/ROW, and no evidence of appellant ever denying a "public utility" use of its ROW, appellant's denial of the third ROW-permit application was arbitrary and capricious, citing *Gorgievski v. Massillon*, 2007-Ohio-3636 (5th Dist.) and *Schroer v. City of Oxford*, 1997 WL 50161 (12th Dist. Feb. 20, 1997).

{¶ 25} The common pleas court agreed with appellees.

> The Commissioners argue that a public utility does not have the right to use a county's right of way. The Commissioners argue that there is no statute, regulation, or court decision that gives any public utility the right to use a governmental right of way. That proposition appears to be true.

> Pioneer and AquaBounty argue that Williams County has routinely approved public utility requests including electricity transmission public utilities. They further argue that the Commissioners cannot arbitrarily or capriciously approve "Public Utility A's" application while denying "Public Utility B's" application. *Henley v. City of Youngstown Board of Zoning Appeals,* 90 Ohio St.3d 142, 147, 2000-Ohio-493, 735 N.E.2d 433;

12.

and *Gorgievski v. City of Massillon,* 5th Dist. Stark No.2006 CA00334, 2007-Ohio-3636, ¶ 26.

In their January 10, 2022 letter to Pioneer, the Commissioners indicated three requirements: (1) a public utility; (2) application approval; and (3) approval by all local and state agencies. This court has found that the Water Transmission Utility and its water line and wastewater line are a public utility. The record indicates that the Williams County Engineer has approved all technical requirements of the lines and that the Ohio Environmental Protection Agency approvals have been secured. Record of Proceeding pp. 20-21 and 106-108. The only step left is the Commissioner's approval of the application.

If the Commissioners had criteria in place distinguishing between the types of public utilities they would approve and the types they would not approve and if the Commissioners had reasonably applied those criteria to Pioneer's application, then the Commissioners decision would be upheld. They did not do so.

{¶ 26} The common pleas court's journalized decision then explains its conclusion

to reverse and order appellants to approve the third ROW-permit application as follows:

To the extent the Commissioners denied Pioneer's application because the Commissioners found that the Water Transmission Utility and its water and wastewater transmission lines were not a public utility, the Commissioners' decision is not supported by a preponderance of the substantial, reliable, and probative evidence on the whole record. To the extent that the Commissioners denied Pioneer's application because Pioneer was not entitled to the requested relief, the court finds the Commissioners' decision to be arbitrary and capricious.

{¶ 27} We find no common pleas court error determining appellant's

administrative decision was arbitrary and capricious.

The Supreme Court has defined the term "arbitrary" in pertinent part as "fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; nonrational; not done or acting according to reason or judgment[.]" *Thomas v. Mills,* 117 Ohio St. 114, 121, 157 N.E. 488 (1927). A court acts arbitrarily when it acts "[w]ithout fair, solid, and substantial cause and without reason given."

13.

*State v. Jones*, 2013-Ohio-3559, ¶ 13 (6th Dist.). "Caprice" has been defined as a whimsical, arbitrary act, seemingly unfounded in motivation, or with the disposition to change one's mind impulsively. *4D Investments*, 1999 WL 8357, at *2 (12th Dist. Jan. 11, 1999); *accord Gerken v. State Auto Ins. Co. of Ohio*, 2014-Ohio-4428, ¶ 48 (4th Dist.). This court has interchangeably used the terms "arbitrary," "caprice" (or "capricious") and "whim" when analyzing the due process challenge to a legislative act that dies not clearly define the prohibited acts. *Viviano v. Sandusky*, 2013-Ohio-2813, ¶ 13, 21 (6th Dist.). Those descriptions are apt in this matter, where the record is devoid of appellant's firm criteria to grant or deny the village's third ROW-permit application. *See Id.*; *see also Apple Group, Ltd. v. Granger Twp. Bd. of Zoning Appeals*, 2015-Ohio-2343, ¶ 10, citing *Cassell v. Lexington Tp. Bd. of Zoning Appeals*, 163 Ohio St. 340, 345 (1955) (in the absence of a comprehensive plan, the administration of a zoning regulation is easily left to the unwarranted whim or caprice of the officials charged with its enforcement).

{¶ 28} Upon review we find no abuse of discretion by the court of common pleas in deciding that appellant's denial of the village's third ROW-permit application was not supported by reliable, probative, and substantial evidence. Appellant's first assignment of error is not well-taken.

14.

## III. Conclusion

**{¶ 29}** On consideration whereof, the judgment of the Williams County Court of

Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant

to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____
JUDGE

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.